Fort Worth & Denver City Railway Company v. R. W. Cushman.

### No. 785.    Decided May 8, 1899.

**1. Passenger Carrier—Ticket—Redemption of Unused Portion—"Tariff Rate" Defined.**

The words "tariff rate," in article 4560d, Revised Statutes, providing for redemption of unused portions of railway tickets, refer to the regular rate (three cents per mile) ordinarily charged, and not to the reduced excursion rate at which the ticket may have been sold. (Pp. 624-626.)

**2. Same.**

The purchaser of an excursion ticket at a reduced rate, who has ridden thereon a distance the fare for which, at the regular rates, would amount to the whole price paid for the excursion ticket, is not entitled, under Revised Statutes, article 4560d, to receive anything from the railway company for the unused portion. (Pp. 624-626.)

QUESTIONS CERTIFIED from the Court of Civil Appeals for the Second District, in an appeal from Wilbarger County.

*Stanley, Spoonts & Thompson* and *Robert Harrison*, for appellant.

*Snodgrass & Britt*, for appellee.—Appellant's contention is, that the words "tariff rate" carries with it the idea of a certain fixed rate, and this is reason for saying that the "tariff rate" means the statutory rate of fare. We believe the rate made under which this ticket was issued is as much a "fixed" rate as the statutory rate is. One is by contract and the other fixed by statutory law. Subdivision 5 of article 4574, Revised Statutes, provides for the issuance of mileage or excursion passenger tickets; and when a ticket is issued under this statute, and at a different rate from the regular statutory rate, such different rate is the tariff for the cost of the trip. A reduced or excursion rate is usually made for a specified time, and for that time such rate is as much a schedule or system of rates as if made for an indefinite time, as by law. When the reduced rate is in force the regular rate is inoperative and of no effect as to persons contracting under the excursion or reduced rates. If tariff is a tax, then the $5 Cushman paid was the sum taxed him for his passage to Galveston and return.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the Second Supreme Judicial District has certified to this court the following statement and question:

"In August, 1897, appellant sold appellee an excursion ticket from Vernon, Texas, via Fort Worth to Galveston, Texas, and return, over its own line and that of the Missouri, Kansas & Texas Railway, for $5, which was far below the regular or maximum fare of 3 cents a mile the distance to Galveston being 509 miles. The coupon from Fort Worth to Galveston, a distance of 346 miles, was not used. Consequently, within the time prescribed by law, appellee applied to the agent who sold him the ticket to have the unused portion redeemed, and this request being refused, brought this suit and recovered judgment for $1.68 as the value of the unused portion of the ticket, and the further sum of $300 as the statutory penalty.

"In submitting the case to the jury, the court in his charge interpreted the words 'tariff rate,' as used in article 4560d, Revised Statutes, to mean the rate at which the excursion ticket was sold, and not the regular maximum rate of 3 cents per mile as fixed by law. Appellant assigns error to this charge, contending that in the article of the statute referred to, in providing for a redemption and declaring that the holder of the ticket is entitled to receive in redemption 'the remainder of the price paid for the whole ticket after deducting therefrom the tariff rate between the point for which the portion of the said ticket was actually used,' the Legislature meant by the words, 'tariff rate,' the regular rate of 3 cents per mile, and not the rate per mile at which the excursion ticket was sold.

"According to the construction given the statute by the court on the trial of this case, the appellant was liable in this action; but according to the construction contended for by appellant, the action is not maintainable. We deem it advisable, in order to a proper disposition of the appeal and in order that the statute in question may receive an authoritative construction, to certify the question so raised to your honors for decision; that is, whether the words, 'tariff rate,' as quoted above from article 4560d, Revised Statutes, refer to the reduced rate at which an excursion ticket is sold or to the regular rate, which in this instance was 3 cents per mile?"

The words "tariff rate" used in article 4560d refer to the rate per mile which the law authorizes railroad companies to charge for transportation of passengers within this State.

The word "tariff" is thus defined by the law dictionaries: "A cartel of commerce, a book of rates, a table or catalogue, drawn usually in alphabetical order, containing the names of several kinds of merchandise with the duties or customs to be paid for the same as settled by authority, or agreed on between the several princes and states that hold commerce together." Rapalje & Lawrence's Dict., Wharton's Dict., Abbott's Dict. This definition is practically the same as that given by

Webster's, Worcester's, and the Standard Dictionary. The Interstate Commerce Commission, in its reports, attaches to the words "tariff rates" and "tariff charges" the meaning that they are rates which the law authorizes railroad companies to charge, and are published in their tariff sheets made according to law. The "tariff" rates are distinguished in these reports and in the treatment of the subject by the Commission from special rates, which are not authorized by law but used by railroad companies to give to favored companies advantage in transportation. See report of Interstate Commerce Commission for 1898, especially pages 8 to 17.

The Railroad Commission of Texas, which is authorized to prescribe freight charges for railroad companies, publishes its rates so made under the head of "Tariffs of Charges or Rates." Tariff rates, then, by all the definitions and uses made of it to which we have had access, convey the idea of its being fixed in amount and prescribed by lawful authority. In construing article 4560d, "tariff rates" must be given the meaning ascribed to them by common use unless there is something in the context which shows that the Legislature intended they should bear a different meaning.

The following language, contained in article 4560d, gave rise to the question certified: "It shall be the duty of all railroad companies in this State * * * to provide for the redemption, from the holder thereof, of the whole, or any parts or coupons of any ticket or tickets which they or any of their duly authorized agents may have sold, if for any reason the holder has not used and does not desire to use the same, upon the following terms: If neither the ticket nor any part thereof has been used by the holder, he shall be entitled to receive the full amount he paid therefor, and where the ticket has been used in part, the holder thereof shall be entitled to receive the remainder of the price paid for the whole ticket, after deducting therefrom the tariff rate between the points for which the portion of the said ticket was actually used." If none of the ticket has been used, then the entire price paid must be returned under the statute. If, however, a portion of the ticket has been used, there must be a deduction from the price paid for the ticket of the rate to be charged for the distance actually used by the holder. If the price paid was subject to a deduction for that portion represented by the part of the ticket used, it would have been fully provided for by omitting the language, "after deducting therefrom the tariff rate," etc., because "the remainder of the price paid" would be construed to mean that portion of the price represented by the unused part of the ticket. The use of the article *"the"* indicates one particular rate and excludes the idea that the sum to be deducted should be based upon different rates in the settlement of different tickets. An excursion rate, which is special and not fixed by law, is in no sense the "tariff rate," and the Legislature must have intended by the words used to point out the rate fixed by law.

It is a matter of common knowledge that it has been the custom of railroad companies to give excursions on special rates such as was made in this case at prices very much below the regular passenger or tariff rates, and the purpose of this law was to secure the railroad companies against the use of excursion tickets for local travel between points not covering the whole distance embraced in the excursion ticket and then selling the remainder of it to be used by another. It was the object of the law to require of the excursionist who might seek to recover from a railroad company a portion of the price paid for his ticket, to pay regular fare for the distance that he had ridden not to exceed the price of the entire ticket.