# NOVEMBER, 1912.

### ORANGE LUMBER COMPANY v. J. S. ELLIS.

No. 2250. Decided November 6, 1912.

**1.—Master and Servant—Defective Machinery—Assumed Risk.**

When injury to a servant is caused by defects in machinery, due to the master's negligence, and known both to the servant and the master, the risk of injury is not necessarily one assumed by the servant, unless he realizes, or from the circumstances should do so, the possible danger from its use in such condition. (P. 371.)

**2.—Same.**

If the risks from use of defective machinery are unusual, not obvious, and not actually or presumptively known to the servant—the injury arising from an unusual or extraordinary consequence which the servant could not reasonably anticipate—the question whether the risk was one assumed by him becomes one of fact for the jury. The master and servant are not on equal terms in this respect, and the former is not necessarily excused for his negligence in furnishing unsafe machinery by the fact that the consequence, being an extraordinary one, is one which the servant was excusable for not anticipating. (Pp. 370-372.)

**3.—Same—Case Stated.**

A foreman in a saw mill had been employed there eighteen months, and for some six weeks had at times fed slabs into a lath saw, which he was doing when injured. Defects in the machinery, of which he had knowledge, occasionally caused pieces of wood to be caught by the revolving saw and thrown back towards the person feeding the machine. The employer had placed a

wooden board 1¼ inches thick to protect the person operating the machine from injury by such pieces. A piece of the slab, caught by the saw, was thrown back with such force as to drive it through the protecting board and to strike the head of the foreman so engaged, destroying his eye. The question whether the risk was one assumed by him is held one of fact, and properly left to the jury. (Pp. 365-373.)

#### 5.—Defective Machinery—Charge—Assuming Facts.

A charge which submits to the jury the question whether the cause of plaintiff's injury was because the machine with which he was working was defective in specified particulars, does not assume the existence of such defects, but leaves that matter to them to determine, Missouri P. Ry. Co. v. Lehmberg, 75 Texas, 66, followed. (Pp. 373, 374.)

#### 6.—Furnishing Safe Machinery—Charge.

No practical difference is perceived in the effect of a charge making it the duty of a master that his "machinery must be in such condition as an ordinarily prudent man would keep it," and one defining his duty to be to use ordinary care in providing a safe machine with which the servant is to work. (P. 374.)

Questions certified from the Court of Civil Appeals, First District, in an appeal from Orange County.

*Adams & Huggins,* and *Baker, Botts, Parker & Garwood,* for appellant.—It is incorrect to hold that although the servant may have been aware of the defect, yet if a man of ordinary prudence on this account would not have refused to work, but would have continued in the service and have continued to perform it, that then he may recover for any injury resulting from such defect; for if the servant, acting as a prudent man would have ordinarily acted, would have undertaken to do the work with knowledge of the defect, this very test relieves the master of liability. Railway Co. v. Bradford, 66 Texas, 732; Crawford v. Railway Co., 89 Texas, 92; Railway Co. v. Mathis, 101 Texas, 351; Currie v. Railway Co., 101 Texas, 478; Railway Co. v. Lempe, 59 Texas, 19; Labatt on Master and Servant; Detroit Crude Oil Co. v. Grabble, 94 Fed., 74; Ward v. Bonner, 80 Texas, 158; Railway Co. v. French, 86 Texas, 98; Railway Co. v. Somers, 78 Texas, 439; Bonnet v. Railway Co., 89 Texas, 72; Railway Co. v. Hynson, 101 Texas, 543; Railway Co. v. Hester, 64 Texas, 101; Watson v. Railway Co., 58 Texas, 434; Ladonia Cotton Oil Co. v. Shaw, 27 Tex. Civ. App., 65; Brownwood Oil Co. v. Stubblefield, 33 Texas Civ. App., 165; Railway Co. v. Ramp, 30 Texas Civ. App., 483; Klutts v. Gibson Bros., 37 Texas Civ. App., 216; Railway Co. v. Peden, 32 Texas Civ. App., 315; Railway Co. v. Parrish, 40 S. W., 191; Allen v. Railway Co., 14 Texas Civ. App., 344; Railway Co. v. McKee, 9 Texas Civ. App., 100; Jones v. Railway Co., 11 Texas Civ. App., 39; Brown v. Miller, 62 S. W., 547; Railway Co. v. Scott, 62 S. W., 1077; Railway Co. v. Robinson, 84 S. W., 410; 37 Texas Civ. App., 465.

The charge quoted is upon the weight of the evidence, and assumes as a fact that the machine was old and worn, not sufficiently bolted, and was unsteady, was not protected by a sufficient covering over the saw and slabs, the rollers not sufficiently fitted with teeth, and that the rollers had been taken off and replaced with others, and that "because of all of the facts and things stated," the machine was

not reasonably safe. Railway Co. v. Christman, 65 Texas, 374; Railway Co. v. Kutac, 75 Texas, 478; Railway Co. v. Brentford, 79 Texas, 623; Railway Co. v. Nixon, 52 Texas, 26; Railway Co. v. Smith, 63 S. W., 1064; Railway Co. v. Scott, 71 Texas, 30; Railway Co. v. Pennell, 2 Texas Civ. App., 128; Railway Co. v. Sibley, 4 Texas Ct. Rep., 922; Railway Co. v. Cassidy, 40 S. W., 198; Overall v. Armstrong, 25 S. W., 440; Pledger v. Railway Co., 4 Texas Ct. Rep., 915; Railway Co. v. White, 32 S. W., 323; Railway Co. v. Artusey, 31 S. W., 319; Pabst Brewing Co. v. Emmerson, 36 S. W., 342; M., K. & T. Railway Co. v. Williams, 40 S. W., 160; Lumber Co. v. Thompson, 113 S. W., 563; Johnson v. Hilton, 133 S. W., 295; Railway Co. v. Lynch, 136 S. W., 580.

In charging the jury that the use of the machine in such a condition as a person of ordinary prudence would keep it would be actionable negligence, if the defendant knew such condition was dangerous, the court committed error prejudicial to the right of the appellant, and such as should reverse this case. Railway Co. v. Wells, 81 Texas, 685; Railway Co. v. Williams, 82 Texas, 342; Railway Co. v. Gormley, 91 Texas, 393; Eddy v. Adams, 18 S. W., 490; Railway Co. v. Bell, 12 S. W., 321; Railway Co. v. Taylor, 44 S. W., 892; Railway Co. v. Johnson, 1 Texas Civ. App., 143; Railway Co. v. Schwabbe, 1 Texas Civ. App., 573; Bering Mfg. Co. v. Peterson, 28 Texas Civ. App., 194; Railway Co. v. Woods, 25 S. W., 741.

*Holland & Holland,* for appellee.—The trial court properly submitted, in the charge complained of, the issue of assumed risk and duty of the master not to knowingly furnish for use by the servant who does not know of such danger a dangerous and unsafe machine, regardless of its condition of repair. Muse v. Abeel, 58 Texas Civ. App., 317; Vilter Mfg. Co. v. Kent, 47 Texas Civ. App., 462.

MR. JUSTICE DIBRELL delivered the opinion of the court.

This cause is before the Supreme Court upon Certified Questions as follows:

"This is an action by J. S. Ellis against the Orange Lumber Company to recover damages, laid at $15,000.00, for personal injuries alleged to have been sustained by him while operating a lath machine as a servant of defendant in its mill. A trial with a jury resulted in a verdict and judgment for $5,500.00. Defendant filed its motion for a new trial, which was overruled, and it prosecutes this appeal.

"It is alleged in the petition that, while engaged in feeding slabs into the machine, a piece of a slab was thrown back with such force as to go through a board an inch and a quarter thick, behind which appellee was standing, and to strike him on the head and eye, so injuring the eye that it had to be removed, and fracturing his skull, and that his other eye was seriously and permanently impaired and injured. It was alleged that the machine at which appellee was working was unsafe and unfit for the purpose for which it was used, that it was old and worn and out of repair, was not bolted to the foundation and made steady; that the machine in carrying slabs through the saw was not protected by any sufficient covering to keep

splinters from being thrown back, and because the rollers through which the slabs pass after passing the saws were not fitted with teeth or spikes to hold the slab steady, but the teeth or spikes on the rollers provided for that purpose were permitted to be worn off or knocked off and were not replaced, and that the rollers on the machine had been taken off by defendant and replaced with others not suited for the purpose, that all of such defects were well known to defendant, and their existence due to its want of ordinary care, and were the sole cause of appellee's injuries.

"Defendant answered by general denial and pleaded contributory negligence and assumed risk on the part of plaintiff, alleging that he was foreman in charge of the work of operating this machinery and charged with the duty of making such repairs as were necessary, and that he was entirely familiar with the working of the machine, knew all about the alleged defects, if in fact they existed, and the danger arising therefrom, if any, and that the accident was one of the risks voluntarily assumed by him.

"In the opinion heretofore rendered by us the following conclusions of fact are found:

"At the time of the accident appellee was in the employment of appellant, and was in charge of the work of operating the lath machine. He seemed to be a sort of foreman in this work, with authority to direct the other men engaged therein. At the time of the accident he was engaged in feeding slabs into the machine. There was a board one and a quarter inches thick placed across the machine just in front of him to protect the man feeding the machine from saw-dust, splinters, etc., liable to be thrown back by the operation of the saws. While engaged in feeding a slab into the machine, in some way not very clearly shown, a piece of the slab was broken off and got on top of the saw and was thrown back by the saw over the front rollers with such force as to go through the board and to strike appellee on the head and in the eye, injuring his head, and either entirely knocking out his eye, or so injuring it as to require the removal of the eye-ball.

"As the facts in this regard are presented by the evidence, even with the assistance of such explanation as is given in the brief, we have not, and cannot present, a very clear and definite idea of the character of the machine, and of the exact cause of the accident, but the evidence sufficiently shows that it was due to some one or more of the defects in the machine alleged in the petition, and the evidence justifies the further conclusion that the accident was occasioned by the negligence of the appellant in some one or more of the particulars charged.

"The finding that appellee 'seemed to be a sort of foreman in this work, with authority to direct the other men engaged therein' we have concluded is inaccurate and should be substituted by the following, 'Appellee was the foreman in charge of the work, with authority to direct the other men engaged therein, and was a vice-principal as to the men under him, but it was a part of his duty, when the necessity therefor arose, to take part in the work as one of the operators of the machine, and at the time of the accident he

was so engaged in the performance of his duty, in feeding slabs into the machine, in the absence of the man who had been doing that work, but whose services were required in a different part of the work.' As the negligence of the master, if any, consisted in furnishing a defective and unsafe machine, we do not deem it material whether or not appellee was a foreman and vice-principal, as we find that he was not responsible for the alleged defects in the machine.

"The judgment of the trial court was reversed by this court and the cause remanded for certain errors in the charge. Upon motion for rehearing by appellee it is insisted that we were in error as to our rulings on the charge, and by similar motion by appellant it is insisted that we were in error in remanding the cause, but that judgment should have been rendered for appellant, on the ground that the undisputed evidence showed that the accident, which caused the injury to appellee, was one of the risks assumed by him, and that we were in error in finding that the evidence was sufficient to require this issue to be submitted to the jury.

"We gather from the evidence, which is not at all clearly stated, however, that there were certain rollers in front of the saws, under which the slabs, intended to be sawed into laths, were pushed in the direction of the saws. The laths after passing the saws were intended to be caught by the rear-rollers, placed about 18 inches behind the saws, which caught the laths and pulled them through out of the way of the saws. It is contended by appellee that the top roller at the rear of the saws, as the machine was originally constructed, had been so made as to operate on each lath, catching it and securely holding it after it passed the saw, so that it could not in any way get caught by the revolving saws and thrown back over the front of the machine and injure the man who fed the slabs into the machine, as appellee was doing when he was injured, but that this arrangement for catching the laths after passing the saws, had been replaced, by the superintendent of the mill, by a solid roller which, on account of the inequalities of the surface of the slab, being high in the middle and lower on the sides, did not catch and hold securely the laths, after passing the saws, in consequence of which pieces were sometimes caught on the revolving saws and thrown back over the front of the machine. To protect the man feeding the machine a board of sufficient width and 1¼ inches thick had been fixed in front of him, about the height of his head, to protect him from these flying pieces thrown back by the saw. This piece of plank was 'jogged,' that is, indented by the action of splinters and small pieces so thrown against it. The board was so placed that it afforded a protection from such pieces thrown back unless one should penetrate the board, as was done in this case. They could not go under the board on account of the front rollers, and if they went high enough to go over the board they would do no injury to the man feeding the machine. This is what we gather from the undisputed testimony as to the character of the machine. On the occasion in question, while standing in front of the machine feeding slabs into it, a piece of lath was broken off and caught by the revolving saws and thrown back with such force as to go entirely through the board in question and strike appellee,

inflicting the injuries complained of. The issue as to whether this was caused by some one of the alleged defects in the machine was properly submitted to the jury, unless upon the evidence the court should have instructed a verdict for appellant on the issue of assumed risk.

"Upon this issue the undisputed evidence shows that appellee was an experienced man and that he had full knowledge as to the operation of this machine, and of all of the alleged defects therein. He knew that the board had been placed in front of the operator to protect him from pieces thus thrown back.

"Appellee testified: 'The machine got to kicking pieces back there and some one put up a 1¼-inch board as a blind.' He was asked: 'Q. Before you went to work there in that department, you had not, up to that time, seen anything wrong about the repairing of the bolting machine with the roller Mitchell put there that was dangerous? Ans. Yes, sir; some pieces would come back, because the board in front had been jogged a whole lot. Q. You are testifying about its condition as you observed it from observation before you went up there? How did it operate after you took charge of it? Did it indicate that it was on a dangerous condition? Ans. It just kept slipping pieces back; sometimes the saw would catch them and shove them out through the saw-dust hole.'

"He further testified: 'There was not anything, after the side pieces had fallen off, to hold the side pieces and keep the saw from kicking them back. There was a blind of woodwork put up in front of where I stood. The machine got to kicking pieces back there, and some one put up a 1¼-inch board as a blind. A man could not see over it, and the piece that struck me went through this 1¼-inch board before it hit me.'

"The accident was a very unusual one. Appellant's president, witness for appellant, testified:

" 'This machine never had an accident in this manner before, and it may never occur again. It might not occur in 100 years, and it might occur at any time.'

"Appellant requested the court to charge the jury that the undisputed evidence showed that the plaintiff assumed the risk of the accident which resulted in his injury, and to return a verdict for the defendant, which was refused.

"This court held that it was not error to refuse this charge, on the ground that, although the undisputed evidence showed that appellee knew of the defects of the machine, and that they sometimes caused pieces to be thrown back with sufficient force to indent the board, appellee could not thereby, as a matter of law, be held to have assumed the risk and danger of having a piece of sufficient size thrown back by the saws, with sufficient force to go through the board and strike and injure him. Upon further consideration, upon motion for rehearing now pending, we have some doubt of the correctness of our holding, and as we concluded to reverse the judgment and remand the cause for other reasons, we deem it proper to certify to your honorable court the following:

"Question One. Did the trial court err, upon the facts stated,

in refusing the charge referred to, or do these facts present the issue of assumed risk which should have been submitted to the jury, as was done?

"The trial court gave to the jury the following charge:

" 'Now, gentlemen of the jury, if you should find and believe from the evidence that on or about the 12th of November, 1908, plaintiff J. S. Ellis was in the employ of the Orange Lumber Company, and while engaged in feeding slabs to a lath machine, a portion of the lath or slab was violently thrown out of same and against and through a blind board, and against plaintiff, and struck plaintiff and inflicted upon him any of the injuries set out in his petition, and you further find and believe from the evidence that the cause of said lath or slab being thrown against plaintiff was because the machine being used was old and worn and out of repair, or because same was not sufficiently bolted to its foundation to cause same to be steady or because the machine carrying slabs, and the slabs, while passing through the saw, were not protected by a sufficient covering to keep same from being thrown therefrom, or because the rollers through which the slabs pass, after passing the saw, were not fitted with teeth or spikes to hold such slabs steady, but that the teeth or spikes on said rollers were permitted to be worn or knocked off, and not replaced, or because the rollers of said machine had been taken off and replaced with others not made with said machine, or suited to the purpose for which they were used, or was the result of one or more of said causes, if any, and you further find and believe that the defendant failed to use the care that a person of ordinary prudence would have used, under the circumstances, to have said machine in a reasonably safe condition, and that it was not in a reasonably safe condition, because of any or all of the facts and things stated, and that the failure of defendant to have said machine in a reasonably safe condition was negligence, as that term is hereinbefore defined, and that but for such negligence the injury would not have occurred, and that such negligence, if any, was the proximate cause of such injuries, then you should return a verdict for the plaintiff, and, unless you so find, your verdict should be for the defendant.'

"Question Two. Is this charge erroneous, in that it assumes the existence of the defects in the machine, and only submits to the jury the issue as to whether such defects caused the injury?

"In reversing the judgment and remanding the cause we concluded that the giving of this charge was reversible error, but upon further consideration, on motion for rehearing, we are inclined to think that such holding conflicts with the holding of the court in the following cases: Missouri P. Ry. Co. v. Lehmberg, 75 Texas, 66; Galveston, H. & S. A. Ry. Co. v. Waldo, 32 S. W., 785; Houston, E. & W. T. Ry. Co. v. Summers, 49 S. W., 1107; approved in 92 Texas, 625.

"The error in the charge, if any, is not relieved by any other part of the charge.

"The court also gave the jury this charge:

"But, gentlemen of the jury, if the machine as it was at the time of the injury was in such condition as an ordinarily prudent man would have kept it, and being in said condition was a dangerous and

unsafe machine to work with, and the defendant knew that it was dangerous and unsafe, or by the use of ordinary care could have known it, then it would be liable to plaintiff for injuries sustained by him in the exercise of the duties required of him, unless he, plaintiff, knew of the danger and unsafety of the machine, or the danger incident thereto was open and apparent to him, or it could and would have been discovered by the use of ordinary care by the plaintiff, while in the discharge of his duty, and the plaintiff, knowing the danger and unsafety of the machine, or by the use of ordinary care while in the performance of his duties could have known it, continued to work with it, he then in law assumes such risks, and he can not recover; and if you so believe, you will find for the defendant.'

"Question Three: Was this charge erroneous in that it imposed upon appellant the duty of providing a safe machine instead of using ordinary care to do so, and made it liable if the machine was inherently unsafe, even if in good repair, unless appellee also knew that it was unsafe, or could have discovered such fact by the exercise of ordinary care? In other words, is it negligence, as a matter of law, in the master to provide for the use of his employees a machine known to him to be dangerous and unsafe, even if in perfect condition as to repairs?"

"By motion appropriate for that purpose, appellee has suggested that that part of our conclusions of fact, accompanying the questions certified in this case, wherein we find that 'appellee was an experienced man,' is calculated to create an incorrect impression on this point, in which, upon further consideration, we agree. We therefore desire to withdraw such statement and substitute the following:

" 'This was the first lath machine appellee had ever seen. He had been working with this one from four to six weeks before he was hurt, and had been working in this saw mill about eighteen months or two years, part of the time as assistant mill-wright, his duties as such being to help repair all the different parts of the machinery. This line of work made him familiar with the machinery in the different parts of the mill. He had never worked in a saw mill before he went to work in this one."

It must be assumed from the findings of fact as set forth in the certificate that the injuries received by plaintiff below did not result from the ordinary operation of non-defective machinery used by him. The machinery operated in its normal condition was not calculated to produce injury by throwing back splinters or pieces of timber from which the person feeding slabs into the machinery might be injured. We infer that such danger alone arose out of some defect in the machinery. In other words, that if the machinery was properly secured to its foundation by bolts and supplied with proper rollers through which the slabs passed after passing the saws, and such rollers were properly fitted with teeth or spikes to hold the slabs steady, no injury was liable to result from splinters or pieces of timber thrown back by the saws. So that the question of assumed risk is based upon the use of defective machinery of which the master and servant both had knowledge. An injury, however, resulting from the use of such machinery would not for that reason alone necessarily

be non-actionable upon the ground of assumed risk, but might be controlled by other important and material facts and circumstances arising in the particular case. The important question is whether the case at bar is attended with such facts and circumstances as would take it out of the general rule. The general doctrine of assumed risk, as laid down by the text writers, to the effect that, where a servant undertakes to perform any particular service, he assumes as a part of his customary obligation the ordinary perils which in the nature of things are incident to such service, is not applicable to the performance of such services with defective machinery unless such defects are known to the servant and at the same time he knows and realizes, or from the circumstances of his position should know and realize, the possible danger that might result from the use of such defective machinery.

As circumstances to be considered in such a state of case as above are, the inexperience of such servant as to the particular work, his right to rely upon the general duty of the master to provide a reasonably safe place for him to work, and where the master has undertaken to provide means of safety for the servant against danger resulting from the operation of defective machinery, known both to master and servant, the right of the servant to rely upon the sufficiency of the master's improvised means of safety. Where such questions are raised by the evidence, it is not within the province of the court to say, as matter of law, the servant has assumed the risk. The issue becomes one to be properly submitted to the jury. There is also another principle of law that is applicable to the subject under review. The general rule that the servant assumes the risks incident to his employment, where he enters or continues in the service of the master after knowledge of the defective machinery employed in the performance of his work and knowledge of the ordinary danger incident to the use of such machinery, does not consequently imply that he assumes the risk of every possible injury that may result from the use of such defective machinery. Under such circumstances he does not assume the unusual and extraordinary risks of which the master knows or which he should know or foresee, unless such risks are obvious, or such servant has actual or presumptive knowledge of such danger. The knowledge which bars the servant of recovery where he enters or continues in the service with defective machinery is the complete appreciation of the risk, and not a mere apprehension of possible danger. The servant assumes the risk of every probable danger, but not of every possible danger. If the injury inflicted by the use of the defective machinery is an unusual or extraordinary consequence and not such as might have been reasonably anticipated by the servant, he will not be barred his redress.

It has been suggested by learned counsel for the defendant below that, in anticipating extraordinary or unusual dangerous results from the use of defective machinery, the master and servant are upon equal terms. We do not think this the case where the injury results from the use of defective instrumentalities known to the master, notwithstanding the servant may know of such defects, for the reason that the master is under obligation to furnish the servant with rea-

sonably safe instruments with which to prosecute his work, and where he supplies instrumentalities for work known to him to be defective and insufficient he is at fault, which is not excused further than the servant will not be permitted to recover damages for injuries growing out of the use of such defective instruments where he knows of the defects and the injury received is the ordinary result of the employment of such machinery. The denial to the servant the right of recovery under the condition named is not an excuse or justification of the master for furnishing the defective instruments of labor. His obligations do not cease. The servant assumes the risks only that are ordinarily and reasonably expected to follow from the use of the defective machinery, and where the injury inflicted is unusual or extraordinary, the servant is excused, but the master is not. He is at fault, and, by supplying defective machinery for his servant to work with, knowing of such defects, he is liable for every possible injury that may result from such neglect, except such ordinary results as the servant may be said to assume when he knows of the defects and is not presumed or shown to have known of the possible results of the use of the defective machinery.

This seems to be the recognized doctrine in this State and is based upon respectable authority as well as upon sound reason. Chief Justice Roberts, in International & G. N. Ry. Co. v. Doyle, 49 Texas, 198, states the law as contended for here as follows: "When the servant accepts service upon being furnished with machinery capable of doing the work required of him which is ostensibly defective in some particular by which it is obviously more dangerous than if it were complete and fully suitable, the servant has assumed the increased risk which may reasonably be anticipated from the defect, and no more; and if the defect rendered its use more hazardous than could reasonably have been discernible by the use of ordinary care, then the master may be in default in the discharge of his duty, and may be liable for an injury produced by such defects in a manner not anticipated."

This same doctrine was pointedly maintained in the case of San Antonio & A. P. Ry. Co. v. Engelhorn, 24 Texas Civ. App., 324, 62 S. W., 561, where the late and learned Chief Justice James of the Fourth Court of Civil Appeals said: "Defendant asked the following charge: 'If you believe from the evidence that the deceased, L. E. Engelhorn, knew or had reasonable ground to believe that the cattle guards along defendant's line of railway upon which he was working were constructed so near to the track as to render it possible for him, in going down the car to pour water upon the hot box, to be struck thereby, then, under the law, he assumed the risk of such danger, and you will find for the defendant.' This was refused, and thereafter the court gave a charge also asked by defendant, in terms the same, except that it used the word, 'probable,' instead of 'possible.' The refusal to give the charge as above copied is the subject of the fifth assignment. Knowledge of conditions involving the mere possibility of a danger is not such a state of facts as necessarily charges a person with knowledge of the danger."

Labatt on Master and Servants, Vol. 1, page 721, section 298, an-

nounces the law on this subject to be as follows: "The ultimate proposition which, as already stated, is implied in the decisions mentioned under the preceding section is, that, in the absence of some special element which suggests a sufficient excuse for his conduct, a servant is chargeable, as a matter of law, with contributory negligence if he goes on working after he has ascertained that an extraordinary risk, creating an ever-present possibility of injury, has been superadded to the incidents of his employment. The knowledge which this doctrine contemplates is the complete appreciation which, as shown elsewhere (Section 271 ante), must also be established before the master can protect himself by the defense that the risk was assumed. The servant's continuance of work with a mere apprehension of possible danger is not such negligence as will bar his action."

It is shown by the findings of fact in the certificate that the accident was the result of the negligence of the defendant below, and was an unusual occurrence. In view of this fact the burden was upon the master to show that the servant knew, or by the exercise of ordinary care should have known, of this possible danger. "The employee is only presumed to assume the dangers usually attendant upon his employment; and when he shows that he has been injured by a cause or danger not usually or reasonably attendant upon his employment, he is then entitled to recover, unless it be shown he knew of such unusual and unreasonable danger and fully comprehended its nature at the time of his employment or before the accident happened. The evidence in this case having established the fact that the injury to the plaintiff was caused by a danger which ought not to have attended his employment, and would not have attended it if the defendant had performed its whole duty towards him, there is no presumption that the plaintiff assumed the unusual risk, and the burden of proof is on the defendant to show affirmatively that he did." (Nadau v. White River Lumber Co., 76 Wis., 120; Labatt on Master and Servant, Vol. 2, pp. 23-24, sec. B.)

We think the trial court did not err in refusing to give the peremptory instruction, as the court could not say, as matter of law, the plaintiff assumed the risk, and therefore answer the first question in the negative.

The second question involves the construction to be placed upon the language of the court's charge as set out in the certificate immediately preceding the question. Does the language employed in the charge assume the existence of the defect in the machinery used by plaintiff and confine the inquiry of the jury to the issue whether or not such assumed defect caused the injury complained of? In construing the meaning of language used we must apply to it the plain, common-sense meaning it was evidently intended to convey. If this rule is adopted in construing the meaning of the court's charge, we do not think it can be correctly concluded that the defects in the machinery were assumed to exist. The jury were required first to ascertain from the evidence whether or not plaintiff was in the employ of defendant, and whether he was injured by a portion of a lath or slab being violently thrown out of the machine and against and through a certain blind board, which struck plaintiff and inflicted

the injuries complained of by him, and second, whether from the evidence they found and believed the cause of the throwing of such portion of the lath or slab was the old and worn condition of the machinery, or because it was out of repair. From the language used it is clear the jury were called upon to find from the evidence whether or not the machine was old and worn and out of repair, and whether such condition caused the portion of the lath or slab to be thrown against and through the blind board. This interpretation is applicable to every part of the charge, and we are unable to give the language used any other meaning. It seems to us that to say by the language complained of the court assumed that the machinery was old and worn and out of repair, or that any part of the machinery was in such condition or defective in any respect, would be a forced and unwarranted construction of the plain and simple language used. The case of the Missouri Pac. Ry. Co. v. Lehmberg, 75 Texas, 56, is in point. In that case the language of the charge is similar to that employed in the charge in this case, and in reply to the criticism that the charge there given assumed as a fact that the engine was defective and unsuitable for the purposes it was used for, Judge Henry said: ''We do not agree with this criticism. The charge does not assert the existence of any fact, but leaves everything for the determination of the jury.''

In view of our construction of the language used we do not think the charge ''assumed the existence of the defect in the machine, and only submits to the jury the issue as to whether such defect caused the injury,'' but rather leaves everything for the determination of the jury. We therefore answer the second question in the negative.

In regard to the third question propounded, it is our judgment there is no material difference between telling the jury that the master is required to use ordinary care in providing a safe machine with which the servant is to work, than saying such machinery must be in such condition as an ordinarily prudent man would keep it. If there is any difference in the result in the language of the two phrases it is too slight to be differentiated.

The latter portion of the third question we are inclined to think is not based upon any fact or proceeding stated in the certificate, and for that reason we are not authorized to make further answer.