## C. L. SMITH OIL CO. v. RIGGS.
### (No. 7201.)

(Court of Civil Appeals of Texas. Galveston.
June 14, 1916. On Rehearing, May 24,
1921.)

1. **Master and servant ⬡⟾288(11)—Assumption of risk by inexperienced and youthful fireman injured by explosion of boiler held for jury.**

In an action for injuries to a fireman from the explosion of boiler, the question whether the plaintiff, who was 16 years of age and inexperienced, assumed the risk of employer's negligence in using salt water in the boiler, in failing to provide a water glass on boiler to indicate the amount of water, and in permitting the steam gauge to become defective, *held* for the jury.

2. **Master and servant ⬡⟾217(1)—Risk of unknown danger not assumed.**

A servant never assumes the risk of conditions of which he is ignorant and is not charg-

ed with knowledge of, nor of conditions of which he has knowledge, unless he may reasonably apprehend or appreciate the danger incident to such conditions.

### On Rehearing.

3. Damages &#9758;132(14) — $5,000, verdict for permanent injuries to nervous system and eyesight held not excessive.

$5,000 verdict for injuries to fireman sustained in explosion of boiler permanently affecting his nervous system, causing him to suffer from neurasthenia, and permanently affecting his eyesight, producing a zigzag sensation after use of eyes for a short period, *held* not excessive.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by Jesse Riggs against the C. L. Smith Oil Company. Judgment for plaintiff, and defendant appeals. Judgment was reversed, and questions certified to the Supreme Court. On remand after answer to questions (230 S. W. 139). Affirmed.

Hunt, Myer & Teagle, of Houston, for appellant.

Carothers & Brown, of Houston, for appellee.

LANE, J. This suit was brought by Jesse Riggs, a minor, by his mother, S. J. Riggs, against the defendant, C. L. Smith Oil Company, to recover damages for personal injuries alleged to have been suffered by him by reason of the explosion of one of appellant's boilers which was being fired by Jesse Riggs at the time of such explosion. For cause of action plaintiff alleged as follows:

"That almost two months prior to the 31st day of October, 1913, the plaintiff, a minor 16 years of age and inexperienced, was employed by the defendant as a helper on one of its drilling rigs at Goose Creek, Harris county, Tex., and plaintiff continued in such employment until the 31st day of October, 1913, at which time he was injured, as will be hereafter set forth, while he was engaged in the performance of his duties to the defendant, his employer, and acting within the scope of his employment. That on the 30th day of October, 1913, defendant's driller and foreman in charge of said rig directed and ordered the plaintiff to fire the steam boiler on said rig that night in the absence of the regular fireman, and plaintiff fired said boiler from about 7 o'clock that night until about 5 o'clock the following morning, at which time said boiler exploded, seriously injuring the plaintiff, as will be hereafter set forth.

"That at the time of said explosion of said boiler and for some time prior thereto the defendant had been using salt water in said boiler, instead of fresh water, a supply of which fresh water was available. That there was no water glass on this boiler, and plaintiff had to resort to the lift-up gauge to determine the amount of water in said boiler, and, with the water that was being used, it was impossible to distinguish the water and foam in said lift-up gauge, and it was impossible to determine with any degree of accuracy the amount of water in said boiler. That defendant had also permitted the steam gauge on said boiler to become choked up, defective, and out of repair and not in working order, and it was, on this account, impossible for a person firing said boiler to determine with any degree of accuracy the amount of steam pressure on said boiler. That in addition thereto the defendant had permitted the safety or blow-off valve on said boiler to become defective and out of order and to remain so, and on this account said safety valve had become stuck and would not work, and the excess of steam could not escape. That the defendant knew of these defects or could have known of same if it had used ordinary care to discover same, and the defendant knew that on account of said defects it was very dangerous to operate said boiler, but the plaintiff did not know of these defects and did not understand, on account of his inexperience and youth, the danger of attempting to fire said boiler in its said condition. That the use of salt water greatly increased the danger of operating said boiler, and greatly increased the tendency of said safety valve to become stuck and out of order, and greatly increased the danger of operating said boiler without an adequate water gauge and increased the difficulty of determining the amount of water in said boiler by means of the lift-up gauge, and the use of such water greatly increased the tendency of the steam gauge to get out of order and rendered it much more dangerous to operate said boiler without an adequate steam gauge. That, in addition thereto, the defendant had wholly failed to provide any system whereby those operating the drilling rig which used the steam generated by said boiler were required to notify the fireman operating said boiler before they shut off the steam from said drilling rig and thus increased the pressure on said boiler. That immediately before said boiler exploded said drilling crew shut off the steam from said rig and greatly increased the pressure on said boiler, but plaintiff did not know that said steam had been shut off, as the increased pressure was not indicated by the steam gauge, and the pressure could not be relieved by the escape valve, which was out of order. That, in addition thereto, the walls of said boiler had been weakened by the use of said salt water, and it had thus been rendered more dangerous. That all of these facts were known to the defendant, or could have been known to it if it had used ordinary care, but they were unknown to the plaintiff.

"That the operation of said boiler and the firing of same under the facts and circumstances above set forth was a dangerous occupation, as the defendant knew or should have known, and the plaintiff was a totally inexperienced boy and unaware of said dangers and how to avoid them, as defendant also knew, but defendant, its agents, servants, and employés, failed entirely to warn plaintiff of said dangers and how to avoid them.

"That the defendant, its agents, servants, and employés, were negligent and careless in the following respects, to wit: (a) In using salt

water in said boiler instead of fresh water; (b) in failing to provide said boiler with a water glass to indicate the amount of water in said boiler; (c) in permitting said steam gauge to become choked up, out of repair, defective, and not in working order; (d) in permitting the safety or blow-off valve on said boiler to become and remain defective, stuck, and out of working order; (e) in failing to provide an adequate system for warning the fireman when the steam was to be cut from the drilling rig and the pressure on the boiler increased; (f) in permitting the walls of the said boiler to become weakened by the action of said salt water; and (g) in failing to warn the plaintiff of the dangers of said work and of handling said boiler in its said condition, and of how to avoid such dangers. That the said acts of negligence on the part of the defendant, its agents, servants, and employés, and each of said acts and omissions, were the direct and proximate cause of the plaintiff's injuries as hereinafter set forth.

"That by reason of said explosion the plaintiff was thrown about 10 feet and was burned and scalded all over his face and arms and over his back, particularly his left kidney, and plaintiff's legs were badly burned and scalded. That plaintiff's left ankle and ankle joint were badly burned, and said ankle was permanently injured. That as a result thereof plaintiff has very poor use of said ankle and will continue to have poor use thereof at all times hereafter. That plaintiff's kidneys were injured by said burns, and plaintiff will probably have kidney trouble therefrom at all times hereafter. That the calf of plaintiff's right leg was severely bruised and permanently injured; that plaintiff was also struck in the head by some object thrown by said explosion, and his head was thereby injured; that plaintiff's whole nervous system has been shocked and permanently injured, and as a result of his said injuries the plaintiff is now suffering and will continue at all times hereafter to suffer from neurasthenia. That plaintiff was confined to his bed for 18 days and suffered and will continue to suffer great mental and physical pain and anguish, and that plaintiff's ability to earn a livelihood has been permanently impaired. That by reason of the foregoing facts the plaintiff has been damaged in the sum of $10,000."

The defendant by its answer admitted that at the time plaintiff, Jesse Riggs, was injured he was a boy of only 16 years of age and inexperienced in firing boilers; that he had been employed by appellant about 2 months before the injury as a helper on one of its drilling rigs; that at the time of his injury he was employed to fire, and was in fact firing, one of appellant's boilers at night; that on the night of the injury defendant's foreman in charge of its drilling rig directed and ordered the plaintiff, Jesse Riggs, to fire said boiler, and that while he was firing said boiler it exploded. Defendant denied that its boiler which exploded was defective, or that salt water was used therein as alleged by plaintiff; but it says that, if such was true, it did not know that such defects existed, or that it could have known thereof by the exercise of ordinary care on its part. It further pleaded contributory negligence and assumed risk on the part of plaintiff.

By supplemental petition plaintiff denied all the defenses pleaded by the defendant.

The case was tried before a jury upon special issues, and in answer thereto it found: First, that defendant used salt water in its boiler and that such act was negligence; second, that the use of salt water was one of the direct and proximate causes of the explosion; third, that defendant was negligent in not having a water glass on the boiler to indicate the amount of water in the boiler, and in permitting the steam gauge on the boiler to become choked up, out of repair, defective, and out of working order at the time of the explosion, and in permitting the safety or blow-off valve to become defective, stuck, and out of working order at the time of said explosion, and that all of these defects contributed to and were concurring causes which resulted in the explosion of said boiler; fifth, that the operation and firing of said boiler under the facts and circumstances shown by the evidence was a dangerous occupation, and that plaintiff, Jesse Riggs, was not warned of such danger by defendant, its agents or employés, and how to avoid the same, and that such failure on the part of defendant or its agents to warn plaintiff directly contributed to his injury; sixth, that Jesse Riggs did not have sufficient intelligence and capacity to comprehend and appreciate the danger of said boiler exploding on account of the use of salt water, or on account of the defects in said boiler, at the time he was put to work firing the same; seventh, that the risk of said boiler exploding, under the facts and circumstances of the case, was not a risk and danger ordinarily incident to the occupation of a fireman, and that plaintiff did not assume the risk of injury from said boiler exploding; eighth, that plaintiff knew of the absence of the water glass and other defects of said boiler at the time he fired the same, but did not know and appreciate the danger of operating the same under such conditions, and that such danger was not obvious to a person of plaintiff's age and discretion; ninth, that plaintiff should recover the sum of $5,000 for his injuries.

Upon such findings of the jury judgment was rendered for plaintiff against defendant for $5,000.

Appellant's first assignment of error is as follows:

"The court erred in permitting the witness Dr. Ross to testify that the plaintiff's main trouble was going to be with his eyes, and in testifying that plaintiff was unable to read steadily, and after reading a little bit it would become blurred, and that there would be a zigzag sensation, and in testifying that there was a nerve weakening in eyes; defendant objecting to all such testimony because the same

was irrelevant and immaterial, and because there was no allegations in any of the pleadings to put the defendant on notice that the plaintiff would claim, or was claiming, any injury to his eyes."

Appellant's contention is that, where damages actually sustained do not necessarily result from the injuries alleged, and are consequently not implied by law, the plaintiff must allege the particular damage which he sustained, for notice thereof to the defendant, otherwise the plaintiff will not be permitted to give evidence of it on the trial, or to recover for injuries not alleged; that, while it may be sufficient to specify the main facts, yet if it is attempted, as in this case, to particularize the injuries arising from the principal one, all the injuries for which recovery is sought should be alleged, to enable proof to be made thereof; and that it was error for the court to permit proof of the injuries to plaintiff's eyes as no such injury was alleged.

Appellee contends that his allegation that "plaintiff's whole nervous system has been shocked and permanently injured, and as a result of his said injuries the plaintiff is now suffering and will continue at all times thereafter to suffer from neurasthenia," in the absence of special exception, is sufficient to admit evidence of the injury to his eyes.

The authorities support the contention of appellant, and are against the contention of appellee. Campbell v. Cook, 86 Tex. at page 632, 26 S. W. 486, 40 Am. St. Rep. 878; Southern Pac. Co. v. Martin, 98 Tex. 322, 83 S. W. 675; Ry. Co. v. Sinton, 109 S. W. 942; Wells Fargo & Co. Express Co. v. Boyle, 39 Tex. Civ. App. 365, 87 S. W. 164; Texas State Fair v. Marti, 30 Tex. Civ. App. 132, 69 S. W. 432.

Plaintiff particularized his injuries, stating that he was scalded, burned over his left kidney, left ankle, and ankle joint; that he would probably have kidney trouble from the burns; that the calf of his left leg was bruised and permanently injured; that he was struck on the head by some object; that his whole nervous system had been shocked and permanently injured; and that as a result the plaintiff was suffering and would continue to suffer, from neurasthenia.

There was no allegation that his eyes or eyesight was impaired, nor was there any allegation that impairment of vision or injury to the eyes is the usual necessary result of neurasthenia.

Dr. F. R. Ross, witness for plaintiff, was permitted to testify, over defendant's objection, as follows:

"I think the boy's main trouble is going to be with his eyes. There was an inability on his part, when I examined him, to read steadily; he tired easily. At the beginning he could read very readily, but then after reading a little bit it would become blurred and he would have a zigzag sensation, all due to exhaustion, and not to any organic disease of the eye itself, but just simply to that nerve weakness and fatigue. That also caused him to have headaches, and then when it comes to the mental part of it, he was unable to apply himself as readily, I mean to any test or to his work, or reading or writing, or anything that he set himself to do; he could not do so readily as he did prior to these injuries that he had received."

The defendant objected to all of this testimony for the reason that there was no allegation in the pleadings which set up injury to the eyes, and nothing to put defendant on notice that such injuries would be proven or damages claimed therefor.

In the case of Wells Fargo & Co. Express v. Boyle, 39 Tex. Civ. App. 365, 87 S. W. 164, it is held that an allegation of the petition that plaintiff was injured in the head, spine, and nerves was insufficient to warrant the admission of evidence of injury to his eyes and eyesight.

In Texas State Fair v. Marti, supra, the court said:

"On the trial plaintiff was permitted to prove that Mrs. Marti was injured internally, and that her groins and ovaries were affected. This evidence was objected to on the ground that no such injuries were alleged in the petition. The objection was overruled, and exceptions duly reserved. We find that the testimony was improperly admitted."

The allegations of the petition concerning the alleged injuries of Mrs. Marti read thus:

"That her head, back, side, arms, and stomach were seriously injured, and her nervous system greatly shocked. * * * It is, of course, well settled that no injuries can be proved except those alleged, and because this rule was not observed on the trial hereof the judgment must be reversed."

The authorities cited and many others support the contention of appellant that the evidence complained of was not admissible. We therefore sustain said assignment No. 1.

The jury found that plaintiff, Jesse Riggs, a boy of 16 years of age, did not have the intelligence, capacity, and discretion to comprehend and appreciate the danger incident to firing a boiler in the condition the one in question was shown to have been and in which salt water was used. Appellant assigns such finding as his second assignment of error.

[1] We think the evidence was amply sufficient to support such finding. Appellant admits the allegations of section 2 of appellee's petition, wherein it is alleged that appellee, Jesse Riggs, was a boy of 16 years of age and inexperienced in the firing and operating a boiler at the time of the injury. The undisputed evidence shows that said boiler was defective as alleged by plaintiff, and that salt water was used therein, and that the use of salt water in such boiler as the one in question was dangerous; that no one

warned Jesse Riggs of such danger, or how to guard against danger by reason of such defects in said boiler. Jesse Riggs testified:

"I did not know the necessity for a water glass. * * * I knew they were using salt water, * * * but I had not heard any one say anything about the danger of using salt water. I had never worked on a boiler where the top valve was out of order. * * * I did not know anything about the dangers of using salt water in a boiler before I was injured. * * * I had never before fired a boiler that did not have a water glass on it. I didn't think about all that; in fact I never had enough experience to realize the danger there was in a boiler."

This evidence stands undisputed.

[2] A servant never assumes the risk of conditions of which he is ignorant and is not charged with knowledge of, and not then unless he may reasonably apprehend or appreciate the· danger incident to such condition. The fact that the servant knew, or ought to have known, that there was some danger does not excuse the master if the danger was greater then the servant, in the exercise of due care, had reason to anticipate. Wood's Master and Servant, § 387, p. 776; Orange Lumber Co. v. Ellis, 105 Tex. 363, 150 S. W. 582; Stalworth v. Gulf Ref. Co., 175 S. W. 767. The second assignment is overruled.

What has been said with reference to appellant's second assignment will also apply to its third and fourth assignments, and for the same reason given for overruling assignment No. 2 we overrule assignments Nos. 3 and 4.

Assignment No. 5 insists· that the sum of $5,000 damage as found by the jury was excessive, etc. In view of the fact that the judgment rendered must be reversed for the reasons given under the first assignment, it it not necessary to decide the question here presented. For the error committed by the court in admitting the testimony of Dr. Ross, complained of by the first assignment, the judgment of the trial court is reversed, and the cause remanded.

Reversed and remanded.

On Rehearing.

At a former term of this court we concluded that, as the plaintiff had alleged several specific injuries to his person by reason of the accident complained of and had not alleged any injury to his eyes, it was error for the trial court to permit the plaintiff's attending physician to testify that his principal injury was to his eyes, and having reached such conclusion, and because of the admission of such testimony, we reversed the judgment of the trial court and remanded the cause for retrial. Pending a motion for rehearing by appellee, we certified to the Supreme Court (230 S. W. 139) the question as to whether or not the testimony complained of was admissible ·under the general allegation:

"That plaintiff's whole nervous system has been shocked and permanently injured, and as a result of his said injuries the plaintiff is now suffering and will continue at all times hereafter to suffer from neurasthenia."

The Supreme Court in answer to such question answered that such testimony was admissible, stating:

"Under the medical testimony set out in the certificate, plaintiff was suffering and would continue to suffer from traumatic neurasthenia, which was a derangement of the nervous system, and the condition of plaintiff's eye was both a symptom and a result of traumatic neurasthenia"—citing H. & T. C. Ry. Co. v. Hanks, 58 Tex. Civ. App. 298, 124 S. W. 138; Ft. Worth & R. G. Ry. Co. v. White, 51 S. W. 856.

It is apparent that the answer of the Supreme[*] Court is contrary to the conclusion reached by us in our former opinion and requires the granting of the motion for rehearing and an affirmance of the judgment of the trial court, unless we can hold under the evidence that the judgment rendered was excessive, as insisted by appellant.

[3] We have carefully examined the evidence relating to this question, and are not prepared to say that the amount awarded as damages was excessive. We therefore affirm the judgment.