TEXAS TELEGRAPH AND TELEPHONE COMPANY
V. JOHN SEIDERS.

No. 1159.

**1. Mental Suffering—Telegraph Company.**—That mental suffering is an element of actual damages for negligently failing to deliver a telegraphic message is settled by too many cases in this State to be disturbed by us.

**2. Addressee May Recover.**—A dispatch for benefit of the plaintiff, and addressed to him, was never delivered. *Held,* that if injured by negligent failure to deliver it, he can recover damages.

**3. Message Delivered to Telegraph Company Through Telephone.**—It being alleged that the message, with name of sender and of the addressee and his residence, were communicated through a telephone to the telegraph office, and that it was the custom of the telegraph company to receive messages in that way for transmission. *Held,* that under such circumstances it was not necessary that the message be reduced to writing and signed.

**4. Notice—Plea Not Sworn to.**—A defense alleging want of legal notice of loss within ninety days, not sworn to, was properly stricken out upon objection of the plaintiff. Laws 1891, p. 20.

**5. Impeaching Witness.**—See predicate and impeaching testimony properly admitted, as well as to impeach the witness as to show his imperfect memory.

**6. Agency.**—It was proper to submit to the jury the question as to agency of the operator who received the message by telephone; and to instruct upon the effect of the operator receiving the message and undertaking its delivery by the telegraph company.

**7. Argument of Counsel—Jury.**—The jury is presumed to have intelligence to understand and to pass upon the facts, and to determine what facts are established as well as what the facts prove. This is the province of the jury as a necessary part of the court, and the judge should not undertake to protect them by giving his own view

of the weight or effect of the evidence by restricting argument of counsel to such view. If counsel assert facts that are not in proof, or argue issues not raised by pleading or proof, the court may interfere.

Appeal from Travis. Tried below before Hon. James H. Robertson.

*Fisher & Townes*, for appellant.—1. The court erred in overruling defendant's fourth special exception, which is in the following words: "Further answering, it [defendant] excepts specially to said petition, because it does not state the message claimed to have been delivered to defendant for transmission, was in writing, and showed said message was not addressed to any one or to any place, nor signed by any one." The special exception is in the above words: Plaintiff's petition avers the message sought to be sent was, "Doctor says father won't live till morning. Come at once." Thomp. on Elec., sec. 151, 153; Tel. Co. v. Dozier, 62 Miss., 288; same case, 7 South. Rep., 325.

2. It is the duty of a telegraph company to transmit messages just as received, without adding to or taking from. The message tendered, as shown by the petition, not being addressed to any one or signed by any one, was consequently without meaning, and no injury could have resulted from failure to transmit and deliver same. Tel. Co. v. Foster, 64 Texas, 220; Tel. Co. v. Dryburg, 78 Am. Dec., 338; Thomp. on Elec., sec. 151, et seq., and cases cited.

3. In the absence of any statutory prohibition, a contract with a telegraph company requiring that claim for damage shall be presented within ninety days after the sending of the message, is valid. Tel. Co. v. Raines, 63 Texas, 27; Tel. Co. v. Culberson, 79 Texas, 466.

*Wheless & Harris*, for appellee.

COLLARD, Associate Justice.—This is an action by the appellee, John Seiders, of San Saba, Texas, against the Texas Telegraph and Telephone Company for damages for alleged failure to transmit from its office in Austin, Texas, to San Saba, Texas, and deliver to plaintiff the following message, alleged to have been received by the defendant's agent at Austin, Texas, and who contracted to send and deliver the same to plaintiff: "Doctor says father won't live till morning. Come at once." The petition alleges that defendant, as a corporation, owns and operates a telegraph line from Austin to San Saba town, in San Saba County; that defendant's was the only line of telegraph or telephone communication between said points; that plaintiff's brother, A. J. Seiders, on the night of the 16th of June, 1892, being informed by the attending physician of his father's serious illness, went to the telephone used in the lunatic asylum, some two or three miles from Austin, and called up defendant's operator at the telegraph office, in Austin; that, on being put in communication with the telegraph oper-

ator, he asked him if he was the operator at the telephone and telegraph office, and the answer was returned that he was addressing such operator; that he asked the operator if he could send a message to San Saba, and receiving an affirmative reply, gave the operator the message to be delivered to plaintiff in San Saba, which the operator agreed to send, and collect charges at San Saba. The petition further alleges, that A. J. Seiders, having another brother, J. D. Seiders, at Taylor, Texas, whom he wished to inform of the illness of their father, ordered the same dispatch repeated to the Taylor brother, which the defendant's operator agreed to do on the same terms as before, and this was done, but the first message (to plaintiff) was never transmitted or delivered to him. The petition proceeds to show, that the father died and was buried at Austin; that if defendant had exercised proper care the message would have been delivered to plaintiff and he could and would have attended his father's funeral, but that by the negligence of defendant and its agents in failing to deliver the message, he was denied the privilege of being present at the funeral, etc., laying his damages at $5000. Defendant filed general and special demurrers to the petition, general denial, and special answers. Verdict and judgment were for plaintiff for $1000, from which defendant has appealed.

The facts proven on the trial, to which the jury under the charge of the court gave credit, are as follows: In June, 1892, the father and mother of plaintiff resided about two miles north of Austin, Texas, about one-half mile west of the insane asylum. A. J. Seiders, a brother of plaintiff, lived with their father, and was an employe at the asylum; another brother resided at Taylor, Texas. Plaintiff resided at San Saba, Texas, about 100 miles from Austin. The father died at his home at 9 or 10 p. m., on June 16, 1892. Before the death the attending physician informed the family that the father would probably die before morning. A. J. Seiders went to the asylum and used the telephone there to communicate a dispatch to plaintiff and the other brother at Taylor, Texas. After being put in communication he called up one Summerrow, defendant's telegraph operator, at defendant's office in Austin, asked him over the 'phone if he could send a dispatch to John Seiders at San Saba, Texas. The operator answered that he could. Seiders told the operator where his brother was, and the operator said "all right." He then asked the operator to take the message, which has already been stated. Seiders asked the operator if he had the message and the operator replied that he had. It was repeated by the operator to Seiders, and was correct. The operator asked about the charges, and was told by Seiders that they were to be paid by plaintiff at San Saba when the message was delivered, and the operator replied "all right," and agreed to send the message "collect." Seiders also directed the operator to repeat the same message to J. D. Seiders, at Taylor, which the operator promised to do, and which he did, and this brother, J. D. Seiders, received the message

and was present at his father's funeral. All this occurred at night, say between 8 and 9 o'clock p. m. The message was not sent to plaintiff. Defendant had an office in San Saba, and kept the same open in day time after 8 o'clock a. m. Had the message been sent, by the exercise of proper care it would have been delivered to plaintiff in San Saba on the morning of the 17th of June, in time for plaintiff to have reached Austin before his father's funeral, in the usual course of travel, and he would have been present at the funeral, which took place at 10 o'clock, June 18th. The relations between plaintiff and his father were as usual between father and son. There was no estrangement between them, and plaintiff was disappointed at not being at the funeral. He did not know of his father's sickness or death until a week or ten days after it occurred, when he was informed of it by letter from his mother. On the same night that the messages mentioned were sent, and after the father died, A. J. Seiders tried to send off another message to each of his brothers that their father was dead. The message to the brother at Taylor was sent and delivered, but it is not clear that the message to plaintiff announcing the death of his father was received by defendant's operator and agreed to be sent by him.

*Opinion.*—The first error assigned by appellant is, that the court erred in overruling the general demurrers to the petition, because it does not allege any physical injury or pecuniary loss as a consequence of the failure to deliver the message. The petition contains full allegations of mental suffering resulting from the failure to deliver the message, and it has been often held by the Supreme Court of this State, that mental suffering is an element of actual damages for negligently failing to deliver such a message. The law is settled by too many cases in this State to be disturbed by us. Stuart v. Tel. Co., 66 Texas, 580; Tel. Co. v. Simpson, 73 Texas, 427; Loper v. Tel. Co., 70 Texas, 689; Tel. Co. v. Broesche, 72 Texas, 654; Tel. Co. v. Cooper, 71 Texas, 507; Tel. Co. v. Richardson, 79 Texas, 651; Potts v. Tel. Co., 82 Texas, 545; Tel. Co. v. Morris, 77 Texas, 173.

The message was sent for the benefit of plaintiff, and he can recover, if injured by negligent failure to deliver it. Tel. Co. v. Richardson, 79 Texas, 650; Tel Co. v. Carter, 85 Texas, 580; Tel. Co. v. Jones, 81 Texas, 273.

Appellant insists that the court erred in overruling the special exception to the petition, because the message was not alleged to be in writing. The petition alleges, that the message was sent over a telephone connection with defendant's office and received by its operator, and a contract made to send it, and that the telephone was used by defendant's employes with the knowledge of the company to receive messages to be sent by telegraph by the defendant, and that such was the general custom in the office of defendant company. The averment, that it was the custom of defendant's employes, known to defendant,

to receive and transmit oral messages over telephone, meets the objection made by the exception and made the petition good, taken in connection with other averments. Thomp. on Law of Elec., sec. 153. Under such circumstances, the message could not be addressed to any one or signed by any one, and it was not necessary to the undertaking by defendant that it should be addressed or signed. The name and address of the person to whom the message was to be sent were stated, the message received by defendant, and a promise made that it would be sent as directed. This was all that the sender could do, and it was sufficient.

Appellant next insists, that the court erred in striking out paragraph 11 of its answer, and sustaining plaintiff's exception thereto. The paragraph referred to sets up as a defense the failure of plaintiff to give notice to defendant of damages within ninety days from the accrual of the same, according to contract set up by defendant.

It is provided by statute in this State, that "No stipulation in any contract requiring notice to be given of any claim for damages as a condition precedent the right to sue thereon shall ever be valid unless such stipulation is reasonable, and any such stipulation fixing the time within which such notice shall be given at a less period than ninety days shall be void, and when any such notice is required the same may be given to the nearest or any other convenient local agent of the company requiring the same. That in any suit brought under this act it shall be presumed that notice has been given, unless the want of notice is specially pleaded under oath." Gen. Laws 1891, p. 20.

The answer setting up the failure to give notice was not sworn to. The contention of appellant is, that the statute requiring the plea of failure to give the notice only had the effect to put the burden of proof upon the defendant setting up the contract. We do not think this is a proper construction of the statute. We think the meaning of the statute is, that it should be *conclusively* presumed that notice was given in the absence of a sworn plea; otherwise, the statute would be meaningless and useless. The burden of proof was never on the plaintiff under such a defense, but has always been upon the defendant, to prove the contract and its breach. Tel. Co. v. Karr, 24 S. W. Rep., 302. This being the law at the time the statute was enacted, it should be presumed that the Legislature by the act cited intended something more than merely to declare the law as it has always existed, and that it was the intention of the act to make true at every stage of the trial the fact that should be presumed in the absence of a sworn plea. We think it was the intention of the statute to require the plea to be verified by affidavit in order to make the issue. The statute requires the plea to be under oath; otherwise, it would be presumed that the notice was given. It was intended by the statute to relieve the plaintiff of proof of compliance with the stipulation in the contract in case the issue was not made under oath. Unless the plea is sworn to, the plaintiff, relying upon the statute, would not come prepared to prove the

notice.    So the requirement that the plea must be under oath indicates the intention of the Legislature that the presumption of notice could not be denied by proof, unless the plea was sworn to.    The point comes within the rules applicable to a plea of non est factum.    The title of the act, in our opinion, is sufficient to authorize the provision of a sworn plea, an incident of procedure, and the provision is not unconstitutional because it is not expressed in the title, or because it contains more than one subject.    Tel. Co. v. Jobe, 25 S. W. Rep., 170.

The appellant next claims, that the court erred in permitting plaintiff to ask the witness A. J. Seiders what occurred between him and Summerrow in an interview had between them in the latter part of November, 1892, with reference to a message sent to plaintiff at San Saba on the night of the 16th of June, 1892.

Summerrow testified in chief, that he was employed by the defendant company at Austin, in June, 1892, as manager and agent; heard of the sickness of plaintiff's father; was called on in reference to receiving a telegram concerning his sickness; that the message was received by him, a message going to Taylor, Texas; that there were one or two messages received, but that he had got them mixed up; that it was about 8 o'clock, and he could not remember the language of the message; it was to Taylor, and sent to Seiders, but did not remember the initials; that they telephoned him to sign it "Seiders;" that he took the message and reduced it to writing, and signed it "Seiders;" that he did not receive any other message to be sent to San Saba, did not write down any other message to be sent to San Saba, and received no message to be transmitted by the Texas Telegraph and Telephone Company; that the telephone was working badly, and the central telephone office was speaking for him most of the time; the wires were working bad, and the street cars were passing, and he could not hear very well; that the message was reduced to writing by him, and he wrote the message on a blank; that it was addressed to Taylor, Texas; that he was not given two addresses to send the message to, and did not write down more than one address, nor receive more than one message.

On cross-examination he testified:    "I said to you [Mr. Wheless and Mr. Seiders] that I had so many messages to send I could not remember anything about any message sent by Mr. Seiders to anybody. I said to you that I did not know about any message being sent by Mr. Seiders.    It is a fact, that the first I recollected of any message being sent by Mr. Seiders was when Mr. Maud showed me the message in my own handwriting on a Western Union form.    When this message was found, A. J. Seiders said he had sent that message to John Seiders, at San Saba, and I said I had no recollection of it, and could not recollect it.    I made an examination, and found no such message in the Texas Telegraph and Telephone Company's files."

The messages found and shown to witness were two, both to J. D. Seiders at Taylor, Texas, dated June 16, 1892, the first being: "Doctor

says father won't live till morning. Come at once. [Signed] A. J. Seiders." And the second: "Father died at 9:30 to-night. [Signed] A. J. Seiders."

Both of these messages were in the handwriting of the witness Summerrow, on Western Union blanks.

The testimony of A. J. Seiders objected to was: "Some time before this suit was brought I went with Mr. Wheless to the office of defendant and the Western Union Telegraph Company, to look up proof about the message as sent to the plaintiff about my father's not being expected to live till morning. He (Summerrow) said that he had no recollection of such a message, but that it might have been sent; that there were a good many messages sent to the office, and that his memory might be at fault; that he would examine the files and records of defendant company and see. He did examine the files and records of the defendant company, and found no such message or reference ·to it."

The court admitted the statement of A. J. Seiders to impeach the witness Summerrow, and upon the ground that a predicate was laid in his cross-examination. We think the testimony was admissible for this purpose. There are some variations shown in the statement of the two witnesses as to what occurred in the conversation, Seiders' testimony showing that Summerrow said "the message might have been sent," though in many particulars the statements correspond. We think the testimony of Seiders was also admissible to show the bad memory of Summerrow as to the facts testified to by him in chief, as tending to render it unreliable.

Appellant says, that the court erred in permitting witness for plaintiff, Sidon Harris, to testify, that he (Harris) had occasion, on December 21, 1892, to send a telegram from Austin to Ward, Murray & Co., at San Saba, and went to defendant's office in Austin, and was handed by defendant's agent, Summerrow, a package of defendant's blank printed forms for messages, and that he wrote and sent the message to Ward, Murray & Co., at San Saba, Texas, on one of the printed forms, tore off several of the forms from the package, and kept them ever since, and then held them in his hands, together with the answer he received from the parties over defendant's line, on December 22, 1892, and that there were no printed forms on the counter at the office that had the figures "90" written over the printed word "sixty" in .the clause limiting the number of days in which a claim for damages must be made; and in permitting the witness to read the printed forms, and the answer on defendant's printed forms for receiving messages, all having the limit in which claim for damages must be made at sixty days, and showing no alteration such as "90" written, printed, or stamped thereon, in reference to the limit of time.

The court qualified the bill of exceptions taken to the admission of the testimony, as follows: "At a former term of the court this cause was tried, resulting in a mistrial. At that time plaintiff's special ex-

ception to the eleventh paragraph of defendant's answer, pleading a failure to give notice of the claim of damages within ninety days, was sustained, because same was not sworn to. When the case was tried this time, the fact that said part of defendant's answer had been stricken out was not called to the attention of the court, and the same was read to the jury and evidence offered by defendant thereunder, without objection by plaintiff's attorneys, evidently all parties having overlooked the fact that said clause had been stricken out; and the fact was never discovered until the court came to prepare the charge to the jury."

To defendant's answer is attached one of defendant's printed blank forms on which messages are to be sent, upon which the eleventh paragraph of the answer is predicated, claiming that plaintiff was barred by the stipulation therein that the company would not be liable for damages in any case where the claim is not presented in writing within ninety days after sending the message. The number of days was originally printed sixty, but written over it are the figures 90. This form was shown to defendant's witness Summerrow while on the stand, and he testified, that he thought the figures 90 over the sixty were in his handwriting, and that they were put there before it was given to defendant's counsel, without reference to the suit. He also testified, that the form was used in defendant's office for transmitting messages; that the change was made to correspond with the change made in the law changing the time to ninety days; that he was instructed to make this change, and tried to keep them all changed that were to be written on, but could not state as a fact that all of them were changed, and was not able to state that he made the change on the forms before June 16, 1892, and that there may have been blanks on the counter of the company's office as late as December 21 or 22, 1892, that did not have any date written over the date printed on the blanks. Defendant had proved by A. N. Leitnaker, its vice-president and general manager, that the form attached to the answer was used at the time in question for sending day messages; that there had been a good many of them printed before the change in the law forbidding a less time than ninety days' notice of damage, and after the change in the law he had directed the agents always in furnishing to change the "sixty" to "ninety," by writing the word "ninety" or figures "90" over the word "sixty," and scratching that word off.

The court admitted the testimony of Harris, objected to, to be considered on the question of credibility of the witness Summerrow, and so informed the jury. We think the testimony was admissible for the purpose stated, and upon the issue of notice pleaded by defendant, then supposed by the parties and the court to be on trial. The blank used by Harris and those found on the counter tended to contradict the impression, sought to be made by Summerrow's testimony, that he had changed the sixty to ninety in the blank forms used by defendant before the message was received for plaintiff, and had so made the change in the form attached to defendant's answer, to which

defendant sought to hold plaintiff bound. If the message had been written on an unchanged blank the law in force at the time rendered it utterly void, because the time given in which to give notice of claim of damages was limited to sixty days. If defendant had offered evidence on the issue, the plaintiff could rebut it or weaken its force by discrediting the defendant's witness to the point.

Appellant assigns as error the court's statement to the jury, that the testimony of Harris was to be considered on the question of the credibility of the witness Summerrow. There was no bill of exceptions reserved to such a statement by the court, and hence the assignment can not be considered. We do not intend to be understood, however, as holding that if there had been exception to the ruling the assignment would be well taken. Our opinion is opposed to the assignment.

We do not think the court's charge defining negligence was erroneous. The charge is the same as in the case of the Austin Rapid Transit Railway Company v. Cullen, decided at the present term of this court, wherein the charge is approved.

The court instructed the jury: "If the said A. J. Seiders requested or authorized Summerrow, the defendant's agent, to reduce said telegram to writing and sign his name to same, or if he understood that Summerrow would do so and then send or transmit said message to San Saba, and there deliver same to plaintiff; for the purpose of reducing said message to writing and signing Seiders' name to it said Summerrow would be the agent of said Seiders; and if he (Summerrow) failed to reduce said message to writing, and because of such failure said message was not received by defendant at its office or transmitted by the defendant, then plaintiff can not recover. But, on the other hand, if said Summerrow, as agent of the defendant, accepted said message, as spoken over the telephone, and agreed to transmit same, without requiring that it be reduced to writing; and the failure to transmit and deliver said message was not due to the failure to reduce same to writing, then the said Summerrow would be the agent of the defendant and not of the plaintiff, and the plaintiff's right to recover would not be affected by the failure to reduce said message to writing or by any act of Summerrow."

The charge of the court is correct. It was in proof, by oral testimony offered by both plaintiff and defendant, that the sender of the message expected the operator to reduce it to writing, but not that there was any express agreement of the kind, or that the sender required the operator to do so. Plaintiff's testimony is to the effect, that defendant agreed to send the message sent over the 'phone, without any contract that the operator was to act for the sender in receiving the same and reducing it to writing.

The other question submitted in the charge, as to whether the failure to reduce the message to writing resulted in a failure to transmit and deliver it to plaintiff, was a contested question in no way admitted to

be true by plaintiff's testimony, and it was not erroneous, as insisted by defendant, to submit the whole subject to the jury as a question to be decided by them.

The defendant requested the following charge, which was refused by the court, and the refusal is the subject of an assignment of error: "If from the evidence the jury believe that the defendant received for transmission to plaintiff at San Saba a message, and that said message was received to be sent under a contract, embodied in the blank upon which the message was written, requiring plaintiff to make a demand for damages within ninety days, then you will return a verdict for defendant, as the uncontradicted evidence is, that notice and demand for damages were not given within ninety days."

The court's ruling was correct, if we are correct in holding that the plea upon which the charge was based was required to be under oath. This was the ground upon which the court refused the requested charge.

The next assignment insisted upon by appellant is: "The court erred in refusing the special instruction asked by defendant, correctly embodying the law with reference to the agency of Summerrow in the matter of receiving the alleged message claimed to have been sent to plaintiff." The charge asked is: "The undisputed testimony in the case shows that the operator at Austin had no authority to receive messages for transmission, except when they were written and tendered to the company at its office. The operator had no right to receive a verbal message for transmission, and if he undertook to receive a message over a telephone, and reduce same to writing and sign the sender's name thereto, in so doing he was the agent for the sender in undertaking to write the message, and if he failed to do so, and the failure to send resulted from such failure, the defendant is not responsible therefor, and if you so find you will return a verdict in favor of defendant."

A fair inference from the testimony is, that it was a custom of the employes of defendant, known to and allowed by it, to receive for transmission messages over telephone, and such being the case, the company would be bound to send a message so received and agreed to be sent by its employes. The first part of the charge asked was not the law of the facts of the case as proved, and the rest of it, so far as applicable, had been given in the court's general charge, to which we have already referred. Hull v. Railway, 66 Texas, 620, and authorities cited.

Other assignments of error relate to the argument of counsel and the court's action thereon as set out in appellant's brief. It appears that the court interfered when asked to do so, and, so far as could be done, corrected counsel for plaintiff, and properly instructed the jury in reference thereto. Other portions of the argument objected to by assignment of error, and not called to the attention of the court for a ruling, we think, were mere declamation and argument legitimately deduced from plaintiff's side of the case. What is and what is not

argument deducible from the testimony, or what an attorney may say in argument, is often a very nice question and difficult to decide. If courts should reverse every case because counsel indulged in a course of argument not precisely in point, or even bad reasoning, drawing false conclusions, there would be few cases that could stand criticism on appeal, and most of them would be reversed upon this ground alone. The jury is not unreasonably presumed to have intelligence to understand and pass upon the facts, and determine what facts are established as well as what the facts prove. This is the province of the jury as a necessary part of the court to do this, and the court should not undertake to protect them by giving the court's view of the weight or effect of the evidence, by restricting argument of counsel to such view. The court should not take such responsibility. If counsel assert facts that are not in proof, or argue issues that are clearly not raised by pleading or proof, the court may interfere, and by so doing correct the evil that may have occurred, but it can not undertake to control the logic of the facts in evidence, and tell the jury that an argument on the facts is not justifiable. The jury must do this. The law imposes this duty upon them, and the court can not assume the responsibility.

In this connection we quote with unqualified approbation the following language in a Pennsylvania case, approved by Justice Walker in the case of Brunswig v. White, 70 Texas, 511: "We can not and will not presume that the jury were other than intelligent men. They are not an accidental part of the tribunal of justice. Juries are an institution of the fundamental law of the land, and we, as a court of errors, can predicate nothing upon their errors, or call that an error of instruction which to us is intelligent and right."

We think in the case at bar the lower court did all that was necessary to eliminate any poison that may have been injected into the case by improper argument of plaintiff's counsel, and that upon matters where the court did not of its own motion interfere, the matter corrected itself before an intelligent jury. We can not say the jury, under the court's instruction and charge, were not sufficient in sense to comprehend the matters submitted to them and the facts in proof bearing upon them.

Finally, we conclude, upon the whole case, that the evidence warranted the court in submitting the case to the jury; that the evidence supported the verdict, which was not excessive, and that the court did not err in receiving the verdict, entering judgment thereon, or in refusing a new trial because of the insufficiency of the evidence, or because of any other error complained of. It is therefore ordered, that the judgment of the lower court be affirmed.

*Affirmed.*

Delivered January 30, 1895.