## CHICAGO, R. I. & G. RY. CO. v. FREDERICK.

### No. 4242.

Court of Civil Appeals of Texas. Amarillo.

June 4, 1934.

Rehearing Denied Sept. 10, 1934.

Stone & Guleke, of Amarillo, for appellant.

Morrison, Morrison & Morrison, of Oklahoma City, Okl., and Norman Coffee, of Stinnett, for appellee.

JACKSON, Justice.

This suit was instituted in the district court of Hutchinson county by appellee, C. B. Frederick, against the appellant, the Chicago, Rock Island & Gulf Railway Company, to recover damages for personal injuries alleged by appellee to have been sustained by him while performing his duties as head brakeman on a freight train engaged in interstate commerce and operated by the Railway Company.

He alleged, so far as necessary to this appeal, that his injuries were occasioned by the negligence of the appellant in the way and manner it constructed and maintained its road at the place of the injury.

The appellant answered by general denial; that the train was engaged in interstate commerce; that the appellee had been warned of the danger of dirt and rock slides on the line where he was injured; that such danger was obvious and known to him; and pleaded the defenses of assumed risk and contributory negligence.

In response to special issues submitted by the court the jury found, in effect, that the

appellant maintained its road at the time and place where appellee was injured in such a manner that a loose rock from the hillside fell on the track; that it was negligence to so maintain the road and such negligence was the proximate cause of the injury; that appellee was not guilty of contributory negligence; that the injury was not the result of an unavoidable accident, and assessed appellee's damages at the sum of $13,500.

In response to special issues requested by the appellant and given by the court, the jury found, in effect, that appellee, while riding on the rear footboard of the locomotive tender, did not know and appreciate the danger of possible injury to himself from a collision between the tender and obstructions which might be on the track; should not have known and appreciated the possible injury from a collision between the locomotive and obstructions which might be on the track; and that from his experience, mental capacity, and opportunity of observing, he did not appreciate the danger of possible injury to himself from a collision between the locomotive and some object that might fall from the face of the cut on to the track.

That appellee "should have known that there would possibly be objects or obstructions on the track with which the locomotive might collide at the time he was riding upon the foot board" and did "know that there would possibly be objects or obstructions on the track with which the locomotive might collide at the time he was riding upon such foot board."

On these findings judgment was awarded in favor of appellee for damages in the sum of $13,500 and costs of suit.

The appellant, by several propositions which will be considered together, contends the findings of the jury to the effect that appellee did not know and appreciate the possible danger and from his experience, mental capacity, and opportunity of observing did not appreciate the possible danger to himself from a collision between the tender and the rock which had fallen on the track, are not supported by the testimony, and that the uncontradicted evidence shows that appellee, as a matter of law, assumed the risk of being injured by said collision.

The record shows that appellee was injured between the stations of Sanford and Antelope, at 1:30 a. m., on appellant's line of railway which, where the accident occurred, extends along the bank of a creek north of the channel, and that north of the track there is a hill rising nearly perpendicular for about forty or fifty feet, then slopes upward several hundred feet, and on the hill there are rocks and boulders. The grade of the road east out of Sanford is 3.6 per cent., and on account of this grade and the size of the engine, in order to get the train from Antelope to Sanford, it was necessary to divide it into three sections and pull one section up the grade at a time. The appellee accompanied the first section from Antelope to Sanford, where he stayed while the engine backed down and brought up the second section. On the way to Sanford with the first section the engine ran into and over some cattle. When the engine was ready to back down to Antelope for the third and last section of the train, appellee in discharging his duty mounted the footboard at the rear of the tender. The footboard was for the employees to ride on when the engine was backing. The appellee maintained his position on the footboard until the tender collided with the rock that had fallen from the hill on the track between the rails, crushing the footboard and inflicting injuries on appellee. The headlight was at the top of the tender and threw a light out above the track, but not down on the track. The appellee carried a lighted lantern and from his position on the rear footboard of the tender could, by turning an angle cock within his reach, put on the emergency brake. Had he been riding on the top of the tender he would not have been in position to put on such brake. He was looking for obstructions, but did not see the rock in time to avoid the collision. The train at the place of the injury was operating under a slow order and the employees were required to take extra precaution and be in position to assist in stopping the train should any emergency so require. The company had furnished the train crew with a time-table, advising that due to the fact that the fills, on the road where the accident occurred, had not fully settled, that there "is considerable dirt and rock on sides of cuts, all trains must watch carefully for rock and dirt slides and fill settlings—particularly after heavy rains." Appellee was 48 years old, had farmed until 1911, then engaged in the railroad business as a brakeman until 1926, had been promoted to the position of a conductor, but because there was no work for him as conductor, he was head brakeman when injured. He had made the trip over this line, passing the place where the injury occurred, 64 times somewhere near sundown and 64 times between 10 p. m. and midnight. There had been no recent rains.

He testified that he was always busy with his duties when passing, took no particular

notice of the condition of the hill, knew there were rocks on it, but did not know they were loose; that no rock had ever been on the track at any of the trips made by him; that he supposed he had received a copy of the time-table but had never been instructed to read it, though the rules so required; and that he had read parts of it. That he knew if the tender came in contact with some obstruction on the track, it would put him in a dangerous position, but he had been over the track some twenty or thirty minutes previously and did not appreciate the possibility or liability of danger by a collision with rock and, had the tender collided with a cow, the footboard would not have been knocked off.

■ The statement in the time-table relative to loose dirt and rock and dirt and rock slides was on page 7, and there is no testimony that appellee had read such statement or knew its contents. The failure to read such statement did not constitute negligence as a matter of law, but was an issue of fact determined in his favor by the jury, since he was acquitted of contributory negligence. Texas & P. Ry. Co. v. Short (Tex. Civ. App.) 62 S.W.(2d) 995.

There is no testimony that either rock or dirt had previously fallen from the hill; none that appellee had any experience with or observation of such slides or the probabilities thereof, except such as is imputed to him by common knowledge.

■ The law is settled in this state that: "If, discarding all adverse evidence and giving credit to all evidence favorable to the plaintiff and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of plaintiff," the findings of the jury should be sustained. Fernandez v. Rahe (Tex. Civ. App.) 61 S.W.(2d) 529, and authorities cited.

"In determining whether a peremptory instruction should be given or whether there is testimony to support the findings of a jury, * * * only the testimony supporting plaintiff's claim may be considered, and we must accept as true the evidence supporting the findings of the jury on the issues presented." Jones et al. v. Jones (Tex. Civ. App.) 41 S.W.(2d) 496, 497, and authorities cited.

■ Under the record and the authorities, we are of the opinion that the evidence was sufficient to authorize the submission and warrant the finding of the jury that appellee did not appreciate the probability of a collision and the risk of injury to himself if it occurred.

■ The jury found that appellee should and did know that there would possibly be objects or obstructions on the track with which the locomotive might collide at the time he was riding the footboard.

In Orange Lumber Co. v. Ellis, 105 Tex. 363, 150 S. W. 582, 586, the Supreme Court says: "The general rule that the servant assumes the risks incident to his employment where he enters, or continues in the service of the master, after knowledge of the defective machinery employed in the performance of his work and knowledge of the ordinary danger incident to the use of such machinery, does not consequently imply that he assumes the risk of every possible injury that may result from the use of such defective machinery. Under such circumstances, he does not assume the unusual and extraordinary risks of which the master knows or of which he should know or foresee, unless such risks are obvious, or such servant has actual or presumptive knowledge of such danger. The knowledge which bars the servant of recovery where he enters or continues in the service with defective machinery is the complete appreciation of the risk, and not a mere apprehension of possible danger. The servant assumes the risk of every probable danger, but not of every possible danger."

■ A servant's knowledge "that the place of work is not in good and proper condition does not necessarily carry with it appreciation of the fact that his safety is in danger. In order that he may be charged with assumed risk or with negligence in continuing at the work, it is necessary that he should have understood and appreciated the danger. This does not mean, however, that he can pretend to be ignorant of ordinary physical laws. What it does mean is that knowledge of the danger will not be imputed to him where it was not so obvious that an ordinarily prudent person would have appreciated it, this being the test both at common law and under the State Railroad and Federal Employers' Liability Act [45 USCA §§ 51–59]." 29 Tex. Jur. 216, § 124.

The servant "does not assume the risks arising from the failure of the master to do his duty, unless he knows of the failure and the attendant risks, or, in the ordinary discharge of his own duty, must necessarily have acquired the knowledge." El Paso & S. W. Ry. Co. v. Vizard, 39 Tex. Civ. App. 534, 88 S. W. 457, 461.

To the same effect is Galveston, H. & S. A. Ry. Co. v. Stoy, 44 Tex. Civ. App. 448, 99 S. W. 135; C. L. Smith Oil Co. v. Riggs (Tex. Civ. App.) 233 S. W. 148.

The doctrine of assumption of risk cannot be predicated upon knowledge alone. "It must be shown that the servant possessed a sufficiently exact appreciation of the nature and extent of the danger in question to enable him to estimate the possibilities of his environment in so far as they affected his bodily safety. * * * The first step in the process of establishing this appreciation is to show that the servant was chargeable with knowledge of the material conditions which were the immediate cause of his injury. * * * The second step * * * is to establish the servant's appreciation of the danger produced by abnormal conditions." 3 Labatt's Master & Servant (2d Ed.) 3207, § 1190.

"Although an employee may have had knowledge as of a physical fact of the defective condition of a tool, appliance or place by reason of which he has sustained an injury, it by no means follows that he must have appreciated the danger to which he was thereby exposed. His general knowledge may not have been such as to give him any conception of the peril. * * * Accordingly it has been held that the knowledge of a brakeman of the unsafe condition of the railroad track upon which he was killed, will not defeat a recovery for his death if it was not so dangerous as to threaten immediate injury or if he might have reasonably supposed that he could safely work on it by the use of care and caution." 18 R. C. L. 694, § 179.

"In order to charge a servant with assumption of risk, it is not sufficient that he should have knowledge of defects in the place of work, * * * or the method of work but it is further necessary that he should know of and appreciate the danger incident to the work under the existing conditions. Assumption of risk implies both knowledge or the means of knowledge and the appreciation of the danger." 39 C. J. 738, § 943.

In Delaware, L. & W. R. Co. v. Koske, 279 U. S. 7, 49 S. Ct. 202, 203, 73 L. Ed. 578, the Supreme Court of the United States, speaking through Mister Justice Butler, says: "The Federal Employers' Liability Act [45 USCA §§ 51–59] permits recovery upon the basis of negligence only. The carrier is not liable to its employees because of any defect or insufficiency in plant or equipment that is not attributable to negligence. The burden was on plaintiff to adduce reasonable evidence to show a breach of duty owed by defendant to him in respect of the place where he was injured, and that in whole or in part his injuries resulted proximately therefrom. And, except as provided in section 4 of the act [45 USCA § 54], the employee assumes the ordinary risks of his employment; and, when obvious or fully known and appreciated, he assumes the extraordinary risks and those due to negligence of his employer and fellow employees. Seaboard Air Line Ry. Co. v. Horton, 233 U. S. 492, 501, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1 [Ann. Cas. 1915B, 475]; St. Louis, etc., Ry. v. Mills, 271 U. S. 344, 46 S. Ct. 520, 70 L. Ed. 979; Northern Ry. Co. v. Page, 274 U. S. 65, 75, 47 S. Ct. 491, 71 L. Ed. 929."

■ The findings of the jury that appellant was guilty of negligence in maintaining its line so that a rock fell from the hillside onto the track, with which the footboard on the rear of the tender collided, is not challenged. We think it obvious that this was not an ordinary risk incident to the employment but an extraordinary risk caused by appellant's negligence.

The employee does not assume extraordinary risk "unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them." Seaboard A. L. R. Co. v. Horton, supra.

■ The record, in our opinion, does not authorize us to hold as a matter of law that an ordinarily prudent person would have observed and appreciated the risk or that appellee should have comprehended the danger.

■ The appellant assails as excessive the verdict of the jury and the judgment of the court rendered thereon.

After the collision at 1:30 a. m. on July 12th, the crew left appellee where the accident occurred, continued to Antelope, got the last section of the train, stopped on its way back to Sanford, placed appellee in the caboose, and after coupling up the train proceeded to Amarillo, where it arrived at 4:40 a. m. An ambulance was called and appellee sent to St. Anthony's Hospital, where he received medical attention by the physicians of the company. The ankle was so severely broken that it permitted the foot to be so turned as to place the toes in the position of the heel. He stayed in the sanitarium from July 12th to August 1st before the fractured member was put into a plaster Paris cast. He remained there forty-two days. There is still a loose bone in the ankle which at the time of the trial was still swollen, sore, gave appellee pain, and not strong enough for appellee to stand on the injured foot any length of time. He had been unable to do any work on account of

the injury to his foot, was not fitted to perform any labor other than railroad work, and on account of the injury was not able to climb on and off of box cars. The injured foot and the uninjured foot were exhibited to the jury. Appellee submitted during the trial to examination of his injuries by physicians selected by appellant. The testimony of appellee as to the extent, degree, permanency of the injury, and the pain was corroborated by the medical testimony offered by him, but controverted by the medical testimony offered by appellant. The appellee earned in 1927, $2,265.22; in 1928, $2,272.04; in 1929, $2,410.67; in 1930, $2,064.09; in 1931, $2,559.42; and in 1932 until his injury on July 12th he had earned $1,047.95.

There is nothing in the record to indicate that the jury was actuated by either passion, prejudice, sympathy, or other improper motives, and in our opinion the record authorized the amount of the verdict and judgment. Morten Inv. Co. v. Trevey et al. (Tex. Civ. App.) 8 S.W.(2d) 527; Galveston, H. & S. A. Ry. Co. v. Andrews (Tex. Civ. App.) 291 S. W. 590; C., R. I. & G. Ry. Co. v. Steele (Tex. Civ. App.) 264 S. W. 503; Wichita Falls, R. & Ft. W. R. Co. v. Combs (Tex. Civ. App.) 250 S. W. 714; Galveston, H. & S. A. Ry. Co. v. Summers (Tex. Civ. App.) 278 S. W. 881; H., E. & W. T. Ry. Co. v. Jackman (Tex. Civ. App.) 217 S. W. 410.

The judgment is affirmed.