**QUANAH, A. & P. RY. CO. v. EBLEN et al.**
No. 4480.

Court of Civil Appeals of Texas. Amarillo.
Oct. 7, 1935.

Rehearing Denied Nov. 18, 1935.

W. B. Combest, of Paducah, L. G. Mathews, of Floydada, C. Y. Welch, of Quanah, and Hamilton & Hamilton, of Matador, for appellant.

W. F. Schenck and Bledsoe, Crenshaw & Dupree, all of Lubbock, for appellees.

**JACKSON, Justice.**

The questions involved in the trial of this case are disclosed by the issues submitted to the jury, and for a full statement of the pleadings we refer to the opinion reversing the judgment on a former appeal, reported in (Tex. Civ. App.) 55 S.W.(2d) 1060.

On this trial the jury found in substance that appellant's operatives failed to ring the bell in approaching the crossing on the belt track where the accident occurred; that such failure was negligence and a proximate cause of the collision and injury; that they failed to keep a proper lookout; that such failure was negligence and a proximate cause of the injury; that the engineer in charge of the train could not, in the exercise of ordinary care, with the means at hand, have avoided the collision; that on account of the injuries sustained plaintiff had suffered damages in the sum of $12,000; that on account of his injuries he had necessarily incurred reasonable doctors' bills in the sum of $719; that the market value of his truck before the collision was $800 and after the collision $200; that plaintiff in approaching the crossing failed to stop his truck a safe distance from the crossing for the purpose of looking and listening for an approaching train; that such failure was not negligence and not a proximate or contributing cause to his injuries; that as he approached the crossing, and within a reasonable distance therefrom, plaintiff looked and listened for an approaching train; that the collision was not an unavoidable accident; that the injury did not result from a collision of the truck with box cars running loose, but resulted from a collision of the truck and one of appellant's box cars attached to an engine; that plaintiff could not, by the exercise of ordinary care, have discovered the approach of the train in time to have avoided the collision; that he knew immediately before the accident that it was the custom of appellant to switch cars back and forth on said belt track; and that plaintiff was an employee of the Magnolia Petroleum Company at the time of the injury.

On these findings judgment was rendered that plaintiff recover the sum of $13,319 with interest; that the Texas Indemnity Company is entitled to be subrogated to the sum of $4,866.51 to be first paid out of the amount decreed to appellee.

The appellant assails as error the action of the trial court in refusing to direct a verdict in its favor, claiming that the testimony shows that plaintiff was guilty of contributory negligence as a matter of law.

"It is well settled in this state that a failure of a person approaching a railroad crossing to stop, look, and listen for approaching trains, and who is killed or injured, does not constitute contributory negligence as a matter of law, but it is a question of fact to be determined under all the surrounding facts and circumstances." Galveston, H. & S. A. R. Co. v. Wells, 121 Tex. 310, 50 S.W.(2d) 247, 251.

The testimony on this trial is substantially the same as on the former trial, and the action of the court in refusing the peremptory instruction requested was settled adversely to appellant's contention by the decision in the former appeal. Quanah, Acme & Pacific Railway Company v. Eblen, supra. In addition, the question of discovered peril clearly presented an issue of fact, and a directed verdict would have been erroneous.

The appellant contends, under proper assignment, that the findings of the jury to the effect that the plaintiff was not guilty of contributory negligence is wholly without support in the testimony. The record shows that the crossing on the belt tract where the collision occurred was in general use by the traveling public; that plaintiff was injured on Sunday, July 7, 1929; that appellant seldom operated a train on Sunday through the town of Paducah, in which the accident occurred, and, so far as the record discloses, no switching on Sunday had ever been done by appellant on the belt track where the collision occurred.

According to a sketch introduced in evidence by appellant and the other testimony, plaintiff had a warehouse, the northwest corner of which was about 12 feet from the belt track; that the distance by the road from the gate entering plaintiff's premises to the point of collision is 77 feet; that it is approximately 115 feet from the place of the collision to a point on the belt track where a train could be seen from such gate. The plaintiff testified that in going from his warehouse

to the crossing he saw no train of any kind or character on the track; that when he started he looked all along and turned and looked after he came out of the warehouse, and there was no train in sight. There is no testimony that plaintiff, after leaving his premises, made any other effort to determine if a train was approaching.

In an opinion by the Commission of Appeals, approved by the Supreme Court, Barron v. Houston, E. & W. T. R. Co., 249 S. W. 825, it is held that the distance from a railroad crossing at which a person should exercise diligence for his own safety, and whether having exercised diligence once at a reasonable distance from the crossing he should make another effort to discover an approaching train before going on to the track, are both questions of fact to be determined by the jury.

Such questions of fact are "to be determined under all the surrounding facts and circumstances." Galveston, H. & S. A. R. Co. v. Wells, supra. And "'If, discarding all adverse evidence and giving credit to all evidence favorable to the plaintiff and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of plaintiff,' the findings of the jury should be sustained." Chicago, R. I. & G. R. Co. v. Frederick (Tex. Civ. App.) 74 S.W. (2d) 275, 277, and authorities cited.

This assignment is overruled.

Appellant contends that under the facts the verdict of the jury, awarding plaintiff the sum of $12,000 on account of the injuries he sustained, is excessive. The record shows without dispute that plaintiff was twenty-six years old, active, vigorous, and in good health when he received his injuries, which consisted of a comminuted fracture of his left arm above the elbow and a dislocation of his left shoulder, both of which were so bruised and swollen that it was necessary to keep the arm in splints for about four weeks. The splints were then removed and the arm placed in a plaster paris cast, which inclosed the upper portion of the trunk or body. Plaintiff was kept in this cast for approximately five months. Upon its removal it was discovered that there had been no union of the comminuted fracture. Plaintiff went to Fort Worth for surgical attention, the flesh of the arm was split, the ends of the bone scraped, and the fracture reduced. He was again placed in a similar cast for some six or eight weeks, but the ends of the bone did not unite. He then went to Dallas, where the flesh of his arm was again split, the ends of the bones scraped, a portion of his leg bone removed and ingrafted into the bones of his arm, after which he was again placed in a cast for an additional eight weeks. During all this time plaintiff suffered from loss of sleep, nervousness, and extreme pain. The arm still gives him pain if used too much, or when lying in certain positions or under unfavorable weather conditions. The arm when healed was from 1½ inches to 1¾ inches shorter than before the injury, and the use thereof diminished from 10 to 25 per cent., and he is not able to handle his heavy merchandise without assistance because of the injury received. Under these facts we do not feel warranted in holding that the judgment is excessive.

"There is nothing in the record to indicate that the jury was actuated by either passion, prejudice, sympathy, or other improper motives, and in our opinion the record authorized the amount of the verdict and judgment. Morten Inv. Co. v. Trevey et al. (Tex. Civ. App.) 8 S.W.(2d) 527; Galveston, H. & S. A. Ry. Co. v. Andrews (Tex. Civ. App.) 291 S. W. 590; Chicago, R. I. & G. Ry. Co. v. Steele (Tex. Civ. App.) 264 S. W. 503; Wichita Falls, R. & Ft. W. R. Co. v. Combs (Tex. Civ. App.) 250 S. W. 714; Galveston, H. & S. A. Ry. Co. v. Summers (Tex. Civ. App.) 278 S. W. 881; H., E. & W. T. Ry. Co. v. Jackman (Tex. Civ. App.) 217 S. W. 410." Chicago, R. I. & G. Ry. Co. v. Frederick (Tex. Civ. App.) 74 S.W.(2d) 275, 279.

The appellant contends that the court, in connection with the issue submitted on damages sustained on account of personal injuries, erroneously permitted the jury to take into consideration the future physical pain of plaintiff and his lost earning capacity up to the date of the trial, because there is no testimony of future physical pain and no evidence by which the jury could intelligently determine the lost earnings. The charge complained of is as follows: "In connection with the above special issue No. 11 in estimating such damages, if any, you are charged that the true measure of damages for personal injuries is such a sum

of money as will compensate the injured party for the injuries complained of and proved, to be arrived at by taking into account the mental and physical pain suffered, if any, and which will be suffered, if any, the earnings lost up to the time of the trial, if any, and the impairment of the ability to earn money, if any, in the future on account of the injury; physical pain and suffering, if any, sustained by reason of the injuries, or which it is reasonably probable will be suffered in the future on account thereof, if any."

The foregoing facts we think sufficient to answer appellant's contention that there was no testimony to the effect that plaintiff would suffer future physical pain. In addition to the facts above recited, the record discloses that plaintiff was the exclusive commission agent of the Magnolia Petroleum Company at Paducah, and that his territory included Cottle and King counties. The petroleum company maintained a warehouse at Paducah of which plaintiff had charge, and from which he distributed the company's products. He gave his entire personal service to the business of soliciting trade, delivering the merchandise ordered, and waiting on customers. The commission he received for his services amounted to four or five hundred dollars per month. After he was injured he had to employ additional help, which he paid $85 per month, and his business suffered for the reason that he was unable to get out and solicit business and the help he hired did not and could not solicit business as successfully as the plaintiff did himself. From the time of his injury until some time after the last operation he was not able to do any work at his place of business.

It is conclusive from the record that plaintiff's injuries caused him to lose time, reduced his ability to work, and diminished his capacity and efficiency to operate his business, upon the successful conduct of which depended the amount of his commissions. The additional help engaged was unable to secure the business plaintiff could have obtained but for his injuries, and for this assistance he paid a salary of $85 per month. The number of months this salary was paid is not shown, but it is a fair deduction from the record that the payment of such salary continued at least until plaintiff was able to return to his business some time after his last operation, which was eight or nine months.

The circumstances show that the amount of earnings lost was not susceptible of exact proof, since in addition to plaintiff's injuries other elements, such as the drought in that locality, which is a fact of common knowledge in this jurisdiction, and the general economical conditions over the whole country which stagnated all lines of business, would affect the amount of plaintiff's commissions. These are matters of which we may take judicial knowledge. George et al. v. First Nat. Bank of Tulia (Tex. Civ. App.) 67 S.W.(2d) 324; Horne v. State, 125 Tex. Cr. R. 192, 67 S.W.(2d) 316; 23 C. J. par. 1810, p. 61.

"The question being whether or not there was any evidence authorizing the submission of the element of damage from impairment of capacity to earn money, its decision must depend upon the evidence in the case in which the charge is given, *and if there be anything in the evidence upon which the allowance of any sum, however small, can properly be made for such damage, the objection to the charge is met.* There are several elements of damage to be considered in suits for personal injuries. As to some of them it is practicable to prove the loss sustained, with some degree of exactness. Such are doctor's bills, medicines, and the like. Of these the law requires such proof. In many cases the value of time lost by the plaintiff may also be so proved, while in some such proof cannot be made, as in case of a wife and mother performing the various duties of housekeeper. This is true also of earning capacity and of injury to it. The law only exacts the kind of proof of which the fact to be proved is susceptible, but it does exact that. The earning capacity of the plaintiff in this case as a stenographer was probably susceptible of definite proof. If it was otherwise, the facts which made it so should have been shown to have entitled her to have the jury estimate it in their own judgment without fuller proof, and to allow full compensation as for a diminution in the amount of her earnings. *Nevertheless, if there is evidence to show with sufficient definiteness the loss of any part of that which she would have earned but for her injuries, the submission of that element was justified.*

"It appears that before she was hurt she could and did walk to and from her work, and that since her injuries she has

been compelled to ride upon street cars. From their own general knowledge and experience the jury could say that this diminished to some extent the returns from her employment, and we think this evidence was as definite as should be required to show loss of earning power to the extent indicated by it. Evidence is adduced to put the jury in possession of facts from which they can determine the extent of impairment of earning power, and is not intended in itself to establish a fixed measure of damages. When the jury are informed of such a fact as that just stated, they have enough to enable them to allow something upon that score. That they are not so informed as to permit them to allow for the full extent of such loss is no reason for saying that they cannot allow for the part of which they are sufficiently informed." (Italics ours.) Dallas Consol. Elec. St. R. Co. v. Motwiller, 101 Tex. 515, 521, 109 S. W. 918, 921.

The evidence, under this authority, we think sufficient to allow something for lost earnings because of the injury inflicted upon plaintiff, and the objection to the charge is not tenable.

Appellant urges as error the action of the court in refusing to reprimand and exclude from the jury argument of counsel for plaintiff because such argument was inflammatory and unwarranted under the evidence. The statement complained of is: "Gentlemen of the Jury: After that accident occurred over there, and after the truck had been lifted from this boy's arm, and while he was in the greatest pain and agony from the crushed arm, the conductor, instead of trying to get him a doctor as he should have done, began immediately the defense of this law suit. He began immediately to take a statement from this boy."

The record shows that the train crew assisted in lifting the truck from the plaintiff. The fireman testified that immediately after lifting the truck off plaintiff, the conductor was trying to take his name and a statement from him, and was writing something in a little book, and at that time the doctor had not arrived.

In Corn et al. v. Crosby County Cattle Co., 25 S.W.(2d) 290, 293, the Commission of Appeals said: "There being evidence in the record amply justifying the statements made by counsel, such state-

ments, while harsh, would not authorize or justify the reversal of the case."

See, also, Texas Telegraph & Telephone Co. v. Seiders, 9 Tex. Civ. App. 431, 29 S. W. 258, and Moore v. Parrish et al. (Tex. Civ. App.) 70 S.W.(2d) 315.

The judgment is affirmed.