**FLORES et al. v. DE GALVAN.**

No. 10384.

Court of Civil Appeals of Texas. San Antonio.

March 15, 1939.

Rehearing Denied April 26, 1939.

M. E. Buckley, Dodson & Ezell, and Chas. W. Duke, all of San Antonio, for appellants.

G. Woodson Morris, of San Antonio, for appellee.

SLATTON, Justice.

Eva Dolores De Galvan instituted this suit in the 57th District Court of Bexar County, against Manuela Acosta, Ofelia San Miguel and husband, Eduardo San Miguel, Juan Gonzales, Dr. W. A. King, M. H. Flores, the Most Reverend A. J. Drossaerts, Domingo Saldiva and Juan Artucha. The last three named were sued by reason of their church positions and as directors and trustees of the San Fernando Cemetery No. 2.

It was alleged that Eva Dolores De Galvan was, on and prior to September 6, 1935, the wife of Bernardo El Galvan, deceased, and of this marriage one child was born; that on the 6th day of September, 1935, her husband died. She made arrangements with an undertaker to conduct the funeral and burial in said cemetery No. 2, and caused to be paid to Flores, superintendent of said cemetery, the sum of $12 for the right to bury the body of Galvan in said cemetery in Section 33, Lot A, Line 8, Grave 33.

It was further charged that on or about February 14, 1936, Manuela Acosta and Mrs. San Miguel and Juan Gonzales wrongfully obtained from Dr. King, city health officer, a disinterment permit authorizing the undertaker to remove said body; that said Acosta, San Miguel and Gonzales, together with Flores, wrongfully and without appellee's consent disinterred the body of her husband on February 14, 1936, and reburied said body in a lot in said cemetery belonging to Acosta, the deceased's first wife, and by reason of said acts she has been humiliated and suffered great anguish of mind and body. A prayer for actual and exemplary damages seeking large sums of money followed.

Juan Gonzales, Mrs. Manuela Acosta and Mrs. San Miguel filed formal answers, but did not appear at the trial. Dr. King appeared and defended upon the ground that he issued the permit pursuant to lawful authority. Said trustees and the superintendent answered that they had no knowledge of any of the acts complained of until after the suit was filed, except Flores. Flores pleaded his good faith in allowing the removal of the body and his reliance upon the removal permit issued by Dr. King. The last named parties denied that they acted wilfully, maliciously, wantonly or with gross indifference to the rights of appellee, and pleaded their want of knowledge of any differences existing between Mrs. Galvan

and the deceased's former wife, Mrs. Acosta.

The cause was tried to a jury. Dr. W. A. King moved for a directed verdict, which was granted. The trustees moved for a directed verdict. The motion was granted as to their individual capacities, but was overruled in their capacities as trustees of the cemetery. The motion for directed verdict of Flores was overruled. Special issues were submitted to the jury and upon the answers the trial court rendered judgment in favor of Mrs. Galvan against Flores, individually, and the trustees of the cemetery, and Juan Gonzales, Manuela Acosta and Ofelia San Miguel, jointly and severally for the sum of $1000 actual damages, and against Flores for the further sum of $50 as exemplary damages, and against Mrs. Acosta and San Miguel and Juan Gonzales, jointly and severally for the further sum of $300 exemplary damages. The trustees and Flores are the only appellants.

The appellants insist that the Legislature, in the exercise of the police power, by the enactment of Art. 4477, Vernon's Ann.Civ. St., particularly Rules 42a and 43a, as amended, prescribed the conditions precedent for obtaining a disinterment permit, and the undisputed proof in the record showing that a licensed undertaker presented to the superintendent of the cemetery a permit to remove the body of Galvan from one lot to another, which permit was regular upon its face and issued by the proper authority, the cemetery was authorized to accord said permit full faith and credit and was not required to make an independent investigation to ascertain whether or not said undertaker was authorized to apply for and to receive such permit, and there being no evidence that the cemetery, through the superintendent and trustees, had any knowledge of lack of authority upon the part of the undertaker, there is no basis for a judgment against the superintendent and the cemetery.

The appellee was on and prior to the demise of Bernardo El Galvan, his wife. On the date of his death, to-wit, the 6th day of September, 1935, she made arrangements with an undertaker to conduct the funeral and burial in the San Fernando Cemetery No. 2. She caused to be paid to the superintendent of said cemetery the sum of $12 for the right to bury the body in the cemetery in Section 33, Lot A, Line 8, Grave 33. The deceased Galvan had previously been

married to Manuela Acosta; Ofelia San Miguel is the daughter of Manuela Acosta.

A standard certificate of death was furnished to the superintendent of the cemetery at the time of burial, which showed the deceased to be married to Eva Torres. The certificate shows the information contained therein to have been furnished by Jose Maria Galvan, address 1127 N. Navidad Street. The certificate also shows the name and address of the undertaker and is signed by a doctor, who certifies to the cause of death.

Manuela Acosta and Ofelia San Miguel discussed with the superintendent of the cemetery the steps necessary to obtain a removal of the body from the place of its burial to another lot and were advised that an undertaker should be procured by the next of kin and a removal permit obtained by the undertaker from the health department. Thereafter a permit was obtained by the undertaker from the health department, written authority was given by Ofelia San Miguel to the superintendent of the cemetery; both were delivered to Flores and the removal of the body followed.

The appellee did not authorize the superintendent to remove the body. The superintendent of the cemetery did not make any investigation as to the next of kin of the deceased, but acted upon the permit and authorization of Ofelia San Miguel, as aforesaid.

█ It is generally conceded that on the death of the husband, the paramount right to control the burial or other legal disposition of the body is in the surviving wife. She is entitled to select the place of burial and the place of reinterment if the remains are removed after burial. 15 Am.Jur. § 9, p. 834 and authorities there cited.

█ The Legislature by the passage of the acts invoked by the appellants did not change the above recognized rights. The permit did not authorize the cemetery to remove the body without the consent of the surviving wife.

█ It is next contended that the superintendent of the cemetery assisted in the removal of the body without any knowledge of appellee's rights being violated. This contention cannot be sustained under the facts contained in the record before us.

Flores insists that the evidence is insufficient to sustain the finding of the jury to the effect that he in assisting in the removal of the body from one grave to another act-

ed in gross indifference to the rights of the appellee. It is true that he categorically denied any knowledge of the conflicting desires of Mrs. Acosta and her daughter and the appellee with regard to the disposition of the remains of the deceased. Flores admitted upon his cross-examination that he knew Galvan before his death and had seen him several times at Galvan's place of business. Upon his direct examination he denied that he was acquainted with Mrs. Acosta, but on his cross-examination acknowledged that she had worked for his wife, and that he had seen her going in and out of his residence. The records of the cemetery, which were kept under his supervision, showed Galvan left surviving him a wife, who, through the undertaker in charge of the funeral, had paid the fee exacted for the right to inter the body in the cemetery. Mrs. Acosta and her daughter made inquiry of Flores seeking to know the requirements for obtaining a removal of the body. Flores did not consult his records to ascertain the facts in reference to the body or the rights of the appellee, but advised them as hereinbefore stated. In addition to the permit issued by the health officer Flores received written authority for the removal from Mrs. San Miguel. Mrs. San Miguel executed the same as the daughter of Galvan. When the removal of the body was effected, Flores transferred a part of the $12 which was caused to be paid him by the appellee, to the grave purchased by Mrs. Acosta and her daughter. Flores is charged by law with knowledge of the legal rights of the appellee. The records of the cemetery disclosed actual facts which were sufficient to apprise him of her rights. He cannot close his eyes to such facts and be heard to say that he acted without knowledge. We think the evidence sufficient to sustain the finding of the jury.

█ Appellants say that the verdict for $1000 is excessive. This sum is in addition to the sum of $50 assessed against Flores and the sum of $300 assessed against Gonzales, Mrs. Acosta and Mrs. San Miguel as exemplary damages. The appellee testified that upon learning of the removal she became sick and had a nervous breakdown, and her condition required the services of a doctor. She also testified that she was humiliated and suffered mental anguish.

In a case such as this, where the law furnished no legal rule for the measurement of damages, the amount to be awarded rests in the discretion of the jury. The amount

awarded by a jury is subject to review by the courts. The courts are reluctant to interfere and will only do so when it is so clearly excessive as to indicate that the verdict was the result of passion or prejudice, or that the jury disregarded the evidence or rules of law. The jury in the present case made the award and the trial court heard the attack made thereon in the motion for a new trial, and allowed the award to stand.

We cannot say that the amounts of damages awarded are excessive to the extent of showing the jury's action in awarding them was the result of passion or prejudice, or in disregard of the evidence.

The judgment is affirmed.

On Motion for Rehearing.

The appellants have filed a motion for rehearing in which it is insisted that we erred in · the original disposition of this case, and vigorously assert that we erred in holding the evidence sufficient to sustain the finding of the jury that Flores, the superintendent of the cemetery, acted in gross indifference to the rights of the appellee.

Our attention has been directed to a statement in our original opinion which we desire to correct. The statement that "a standard certificate of death," and the paragraph ending with "the cause of death," should read as follows: A burial permit was furnished the superintendent of the cemetery, which, according to the books of the cemetery, contained the following information, to-wit: "It is interment No. 16796; Bernardo L. Galven; place of birth, Mexico; late residence, 124 North Santa Rosa Avenue; age 51 years, sex male; social state, married; date of death, Sept. 6, 1935; date of burial, Sept. 8, 1935; place of interment, Sect. 3, Blk A, Line 8, and Grave 33; Lot, none; Lot Book page, none; grave fee, $7.00; name of undertaker, Morales; parish from which he was buried, San Fernando Cathedral." The standard certificate of death mentioned in the original opinion was a public record in the health department of the City.

We also erred in the original opinion in the statement, that at the time Mrs. Acosta and Mrs. San Miguel went to see Flores in regard to the removal of the body, "Flores did not consult his records to ascertain the facts in reference to the body or the rights of appellee." This statement is incorrect, Flores testified that when said ladies came

to him Mrs. San Miguel told him she was the daughter of Galvan, and that he went to his records and found out it was Bernardo L. Galvan.

We now direct our attention to the claim that the evidence is insufficient to sustain the finding of the jury that Flores acted in gross indifference to the rights of the appellee. The rule applicable is often stated as follows: " 'If, discarding all adverse evidence and giving credit to all evidence favorable to the plaintiff and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of plaintiff,' the findings of the jury should be sustained." Quanah, A. & P. Ry. Co. v. Eblen, Tex.Civ. App., 87 S.W.2d 540, 542, writ refused. The evidence shows without dispute that Bernardo L. Galvan was married at the time of his demise. The records kept under the direction of Flores showed such facts, which, according to his own testimony, he consulted when Mrs. Acosta and Mrs. San Miguel came to him with reference to the removal of the body. The record also showed the late residence of the deceased to be 124 North Santa Rosa. Flores denied knowing the deceased and gave the following testimony:

"Q. You did not know him at all? A. I saw him by sight like I know you, yes.

"Q. You didn't know that he had a shop here on North Santa Rosa Avenue? A. Yes, sir, I did—I did see him there.

"Q. How long did you know Mr. Galvan, just in that way please? A. Well, I had known him for a long time, I believe, he was always standing by the door and so when I passed there I saw him all the time."

Flores, by his own testimony, recognized the right of removal belonged to the next of kin. Flores testified with reference to knowing Mrs. Acosta:

"Q. You had known Mrs. Acosta a long time hadn't you? A. Yes, I knew Mrs. Acosta.

"Q. How long had you known her before that time? A. Well, since we discussed about moving of this body and met both of them.

"Q. Didn't you know her before because of some dressmaking done for your wife? A. I believe it was after that about the dressmaking. I don't remember when it was done, whether before or afterwards."

The record kept by Flores indicated the name of the funeral director, who on behalf of appellee had made the arrangement for the burial and paid the fee on her behalf. A part of said fee was allocated to pay for the upkeep of the grave.

Under the foregoing facts it seems to us that Flores could not in good faith allow the removal of the body of Galvan without the consent of the survivor. It is argued that Flores did not know the appellee; and hence it cannot be said that he acted in a wilful disregard of her rights. His records indicated the existence of a survivor. The survivor lived at the late residence of the deceased Galvan. The standard death certificate contained the information, and such certificate is a public record open to Flores under the law. Any sort of investigation upon his part would have disclosed all the true facts, either through the death certificate, undertaker, or by making inquiry at the late residence of the deceased. Then, too, the jury had the right to reconcile the conflicts in the testimony of Flores with reference to the extent of his acquaintance with Mr. Acosta, and conclude therefrom that he had known Mrs. Acosta for a long time. The jury undoubtedly believed that Mrs. Acosta had been employed by the wife of Flores before she and Mrs. San Miguel consulted Flores with reference to the removal of the body, and because of that relationship Flores acted as a partisan of Mrs. Acosta in advising them in regard to the removal, and in allowing the removal, of the body without the consent of the surviving wife. The jury undoubtedly did not believe the testimony of Flores to the effect that at the time Mrs. Acosta and Mrs. San Miguel came to see him, they were unknown to him. The jury had the right to infer from the evidence that Flores ignored the legal right of the surviving spouse, because of his partisan feeling on behalf of Mrs. Acosta, or in order to be able to sell a lot to her. The jury was not compelled to accept his assertions of good faith, in view of other admissions heretofore mentioned.

If Flores, in advising Mrs. Acosta and Mrs. San Miguel and in allowing the removal of the body without the consent of the survivor, was prompted through a desire to accommodate Mrs. Acosta, or to effectuate the sale of a lot in the cemetery, then such conduct must be construed to be in gross indifference to the rights of the survivor. These inferences were deducible from the evidence. The jury having found that Flores in distinterring the body acted wilfully and with reckless and gross indifference to the right of appellee, it is our duty, under the record presented, to uphold such finding.

 It is argued that it will not do to hold that a cemetery upon being presented with a disinterment permit, before taking any action, must make an investigation to ascertain the rights of the parties with reference to the body, and act at its peril. We think the facts of this case illustrate the necessity of requiring the cemetery to follow the law, that is, before allowing a removal to obtain the consent of the next of kin, in this case the surviving wife. Had Flores demanded written consent of the surviving wife in the present case, no liability could attach in favor of any one against the cemetery.

The motion is overruled.